[Civ. No. 4192.   Second Appellate District, Division One.—July 18,
1924.]

## MARJORIE LONG, Respondent, v. CHRONICLE PUBLISHING COMPANY (a Corporation), Appellant.

[1] CONTRACTS — NEWSPAPER SUBSCRIPTION CONTEST—ACTION TO RECOVER VALUE OF PRIZE — RULES OF CONTEST—PLEADING—DENIAL OF MOTION BY DEFENDANT FOR JUDGMENT ON PLEADINGS—OVERRULING OF DEMURRER.—In an action to recover the value of an automobile offered as a second prize in a newspaper subscription contest, where the amended complaint showed that the duty only of counting the votes correctly was assumed by the judges of the contest, that a rule of the contest requiring that "cash must accompany all orders" was waived by defendant, and that had the judges properly given plaintiff credit for two uncertified checks covering subscriptions she would have received a sufficient number of votes to entitle her to the second prize, and the answer to the amended complaint, in addition to certain admissions and denials, contained an affirmative defense based upon a notice given by defendant on the beginning of the last week of the contest to the effect that all subscriptions must be accompanied by cash, money order, or certified check (no mention of such notice being made in the amended complaint), together with the alleged finality of the decision by the judges of the contest—all of which being deemed denied by plaintiff, raised issues thereon requiring the introduction of evidence in substantiation thereof, no error was committed by the trial court in denying the defendant's motion for judgment on the pleadings and in overruling the demurrer to the amended complaint.

[2] ID.—NONSUIT—EVIDENCE.—On a motion for nonsuit it is a cardinal rule that the evidence must receive a construction most favorable to the plaintiff, and whatever the evidence so construed tends to prove, together with such presumptions and inferences as may be reasonably drawn therefrom, must be regarded by the court as in fact proven.

[3] ID.—NOTICE OF CHANGE IN RULES — ABSENCE OF SERVICE — EVIDENCE — NONSUIT.—In such action, where the evidence introduced in behalf of plaintiff supported the allegations of the amended complaint, and in addition thereto plaintiff caused to be introduced the notice pleaded by defendant, but did not show either actual or

1.  See 19 Cal. Jur. 1066.
2.  See 9 Cal. Jur. 557; 9 R. C. L. 191.
3.  See 9 Cal. Jur. 561.

constructive service of such notice on herself, the injection of said notice into plaintiff's case was of no great consequence, and the motion for nonsuit was therefore properly denied.

[4] ID.—CHANGE IN RULES—NOTIFICATION OF PLAINTIFF—QUESTION OF FACT — CONFLICTING EVIDENCE — MOTION FOR DIRECTED VERDICT PROPERLY DENIED. — In such action, where the defense depended primarily upon a decision of the fact as to whether or not plaintiff had been notified by the defendant that during the last week of the contest only such subscriptions as were covered by either cash, or by money orders, or by certified checks would be credited to the several contestants, the question of fact was one for determination by the jury, and the evidence thereon having been conflicting the trial judge would not have been authorized to withdraw such question from the consideration of the jury by granting a motion for a directed verdict.

[5] ID.—NOTICE—STATUTE SILENT AS TO MANNER OF GIVING—PERSONAL SERVICE OF NOTICE REQUIRED. — A statute requiring that a notice shall be given, but which is silent as to the manner of giving such notice, contemplates personal service thereof.

[6] ID.—PERSONAL NOTIFICATION OF PLAINTIFF—CONFLICTING EVIDENCE —EFFECT OF JURY'S VERDICT.—In such action, where there was a conflict in the evidence with reference to personal notification of plaintiff by defendant's manager to the effect that a rule of contest had been modified so as to require cash, or a money order, or a certified check to accompany each subscription to the newspaper, the verdict by the jury in favor of plaintiff constitutes a finding in plaintiff's favor as to such disputed fact.

[7] ID.—FINALITY OF DECISION OF MANAGEMENT—RULE OF CONTEST— EFFECT UPON PLAINTIFF'S LEGAL RIGHTS. — Under a rule of such contest which provided that "should any question arise the decision of the management will be absolute and final," the authority of the management or of the judges of the contest could not be so used as to deprive plaintiff of her legal rights. Assuming that the judges of the contest acted in the highest good faith with reference to their determination of the facts relative to plaintiff's rights in the premises, they possessed no authority to decree that plaintiff should not have that to which she was legally entitled.

[8] ID.—ABSENCE OF PERSONAL NOTICE OF CHANGE IN RULES—EARNED RIGHTS OF PLAINTIFF UNAFFECTED BY DECISION OF JUDGES. — In such action, if plaintiff received no personal notice of the change in the rules of the contest as a result of which cash, or a money order, or a certified check was required to accompany each subscription (and the jury so found on the evidence that no personal notice was received), neither the defendant nor its "management" could

5.  See 20 **Cal. Jur.** 243; 20 **R. C. L.** 343.

rightfully take away from her that which she had earned under the terms of the contract, even though the defendant had contemplated by another provision of the contract to make the decision of the "management . . . absolute and final."

[9] ID.—CONCLUSIVENESS OF DECISION OF PARTY TO CONTRACT.—It cannot be lawful for one party to a contract, even by express terms thereof, to provide, in advance of any controversy growing out of the contract, that his judgment of the law regarding any question which may arise shall preclude the other party to the contract from contesting the same in a court of law or equity.

[10] ID.—DECISION OF JUDGES—RULES—JURISDICTION.—In such action, where the judges of the contest who decided against plaintiff as to her right to the second prize were selected solely by the defendant, and there was nothing to show that the judges were selected according to the terms of the contract, nor that they constituted the "management" as provided by the rules of contest, even conceding the right of some judges, under proper circumstances, to decide the controversy, no authority or jurisdiction was shown in the judges who did decide it.

[11] ID.—ACCEPTANCE OF UNCERTIFIED CHECKS — ESTOPPEL.—In such action, the defendant having accepted the two uncertified checks presented to it by plaintiff, and having received the cash represented thereby, and being financially benefited to that extent, was in no position to urge compliance with the belated rule—that cash, money order, or certified check must accompany each subscription—of which plaintiff had neither actual nor constructive notice.

[12] ID.—CHANGE IN RULES—PLAINTIFF ENTITLED TO ACTUAL NOTICE OF—INSTRUCTIONS.—In such action, no error was committed by the trial court in instructing the jury to the effect that plaintiff was entitled to actual notice regarding any change in the rules governing the contest.

[13] ID.—RULING UPON MOTION IN PRESENCE OF JURY — ABSENCE OF ERROR.—In such action, where after all the evidence in the case had been introduced and counsel for the defendant had declared in open court that after the jury should be excused he desired to make a motion for a directed verdict, no error resulted from the fact that the trial judge, in the presence of the jury, stated, "I will overrule it" (referring to counsel's proposed motion).

[14] ID.—EXTENT OF VERDICT—INSTRUCTIONS—ABSENCE OF PREJUDICIAL ERROR.—In such action, where under the pleadings in the case and as a matter of law, plaintiff was entitled either to a verdict for

9.  See 6 Cal. Jur. 130; 6 R. C. L. 752.

11.  See 10 Cal. Jur. 631, 647; 10 R. C. L. 692, 694.

12.  See 20 R. C. L. 344.

13.  See 26 R. C. L. 1026.

14.  See 2 Cal. Jur. 1026; 2 R. C. L. 256.

$1,995, the value of the second prize, or nothing, with the exception that she might in any event be entitled to a verdict for $500, representing the third prize in the contest, and the questions asked by the jury upon their return to court for further instructions indicated that the jury was considering solely its right to find for plaintiff and then "to set any other amount besides the supposed value of the car at that time, which, as we understand, was $1,995," and no question existed in the minds of the jury respecting the third prize, no prejudicial error was committed by the trial court in orally advising the jury upon its return to the courtroom for further instructions that the jury must find for plaintiff either in the sum of $1,995 or nothing.

[15] ID.—EVIDENCE — CROSS-EXAMINATION OF PLAINTIFF—ABSENCE OF PREJUDICE.—In such action, where plaintiff had testified that, with the exception of the two uncertified checks in question, cash was paid for all subscriptions handed in by her during the last week of the contest, defendant obtained everything which it sought by a question asked plaintiff on cross-examination (to which the court refused to permit an answer) as to how much money and how many checks for subscriptions were "turned in" by her on the last week of the contest, other than an answer to the question of the amount of cash which was handed in by the plaintiff; and as to the refusal of the court to permit the witness to testify thereto, no prejudicial error is perceived.

(1) 31 **Cyc.**, p. 607; 36 **Cyc.**, p. 773.   (2) 38 **Cyc.**, p. 1553. (3) 13 **C. J.**, p. 797, sec. 1032.   (4) 13 **C. J.**, p. 797, sec. 1032; 38 **Cyc.**, p. 1568.   (5) 29 **Cyc.**, p. 1119.   (6) 38 **Cyc.**, p. 1869.   (7) 13 **C. J.**, p. 680, sec. 773.   (8) 13 **C. J.**, p. 680, sec. 773.   (9) 13 **C. J.**, pp. 455, 456, sec. 397.   (10) 13 **C. J.**, p. 680, sec. 773 (Anno.). (11) 13 **C. J.**, p. 694, sec. 788.   (12) 13 **C. J.**, p. 590, sec. 604. (13) 4 **C. J.**, p. 956, sec. 2937.   (14) 4 **C. J.**, p. 1029, sec. 3013. (15) 4 **C. J.**, p. 968, sec. 2951.

APPEAL from a judgment of the Superior Court of Imperial County. Frank R. Willis, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Patrick J. Cooney and Alfred Blaisdell for Appellant.

Charles L. Childers for Respondent.

15.   See 2 Cal. Jur. 1022; 2 R. C. L. 253, 256.

HOUSER, J.—This action was brought by plaintiff against the defendant for the value of an automobile alleged to be the sum of $1,995, which was offered by the defendant as a second prize in a newspaper subscription contest.

The facts may be briefly stated as follows: The defendant published in its newspaper a general offer by which it agreed to give certain designated prizes to the winners of a subscription contest, and provided rules governing same, among which were provisions to the effect that "cash must accompany all orders"; that the contest would be under the personal supervision of two or more judges "from the advisory board"; that the right to amend the rules was reserved to the defendant; that should any question with reference to the contest arise, the decision of the management would be absolute and final; and that each of the contestants agreed to abide by all the foregoing conditions.

From the start, the rule requiring that cash should accompany all orders was waived by the defendant and, until the last week of the contest, personal checks were received in payment of subscriptions. The contest lasted for a period of about eight weeks, and on the beginning of the last week thereof the defendant published in its newspaper a notice as follows:

### "IMPORTANT NOTICE.

"All subscriptions deposited in the sealed ballot box must be accompanied by cash, money order, or certified check for the full amount to cover. Personal checks up to $10.00 are acceptable, providing no two checks are signed by the same party. This rule is made in fairness to all candidates and will be strictly adhered to."

At some time during the evening of the last day of the contest plaintiff deposited with the defendant an uncertified check for $30 and another uncertified check for $18, to cover certain subscriptions obtained by plaintiff, which checks were cashed and the money received therefor was retained by the defendant. When the judges of the contest made an accounting for the several contestants it was found that by giving plaintiff credit for the subscriptions covered by the two uncertified checks, aggregating $48, she would be entitled to the second prize, which was an automobile of the stipulated value of $1,995; otherwise she would be entitled only

to the third prize, which was of the value of $500. The con-
clusion by the judges of the contest was that plaintiff was
entitled only to the latter prize. Plaintiff was dissatisfied
with such determination and brought this action. The case
was tried before the court sitting with a jury, which ren-
dered a verdict in favor of plaintiff for the sum of $1,995,
on which judgment was entered, and the defendant appeals
therefrom.

The defendant demurred generally to the amended com-
plaint, which set up in substance at least all the foregoing
facts, with the exception of the "Important Notice," which
was published at the beginning of the last week of the con-
test. The demurrer was overruled. The defendant's motion
for judgment on the pleadings was likewise denied; and it
is to such rulings that the defendant first directs attention
of this court as a reason for a reversal of the judgment.

[1] As the amended complaint was drawn, no mention
was made of the requirement contained in the "Important
Notice" that either cash, money order, or a certified check
must accompany the subscriptions. The allegations of the
amended complaint showed that the duty only of counting
the votes correctly was assumed by the judges of the con-
test; and it was alleged that had the judges properly given
plaintiff credit she would have received a sufficient number
of votes to entitle her to the second prize, of the value of
$1,995. The answer to the amended complaint, in addition
to certain admissions of fact set up in the amended complaint
and the denial of certain other allegations therein, contained
an affirmative defense based upon the "Important Notice,"
together with the alleged finality of the decision by the
judges of the contest—all of which being deemed denied by
plaintiff, raised issues thereon requiring the introduction of
evidence in substantiation thereof. In such circumstances no
error was committed by the trial court in denying the de-
fendant's motion for judgment on the pleadings; and we
think that the court did not err in overruling the demurrer
to the amended complaint.

Appellant next complains that the trial court erred in
denying the defendant's motion for a nonsuit, as well as in
denying the defendant's motion for a directed verdict.

[2] On a motion for nonsuit it is a cardinal rule that
the evidence must receive a construction most favorable to

the plaintiff, and whatever the evidence so construed tends to prove, together with such presumptions and inferences as may be reasonably drawn therefrom, must be regarded by the court as in fact proven. (*Ferris* v. *Baker*, 127 Cal. 520 [59 Pac. 937], and cases cited; *Union Construction Co.* v. *Western Union Tel. Co.*, 163 Cal. 298 [125 Pac. 242].)

[3]  A review of the record on appeal discloses the fact that the evidence introduced in behalf of plaintiff supported the allegations of the amended complaint. In addition thereto, however, plaintiff caused to be introduced in evidence the "Important Notice" pleaded by the defendant. But in view of the fact that plaintiff did not show either actual or constructive service thereof on herself, the injection of the "Important Notice" into plaintiff's case was of no great consequence. The motion for nonsuit was therefore properly denied.

[4]  Regarding the motion for a directed verdict, it need only be said that the evidence with reference to the service of the "Important Notice" on plaintiff, or the knowledge of plaintiff acquired either by actual or by constructive notice of the contents of the "Important Notice," was conflicting. The defense depended primarily upon a decision of the fact as to whether or not plaintiff had been notified by the defendant that during the last week of the contest only such subscriptions as were covered by either cash, or by money orders, or by certified checks would be credited to the several contestants. The question of fact was one for determination by the jury, and the judge of the trial court would not have been authorized to withdraw such question from the consideration of the jury.

The contract between the parties provided in substance, among other things, that the rules governing the contest might be changed, and that in the event of any question arising, the decision of "the management" would be absolute and final. Although the wording of the contract is not clear, throughout the trial it was assumed by both parties to the action that "the management" referred to the judges of the contest. For present purposes, it may therefore be here assumed that if plaintiff had had notice of the change in the rules to which reference has just been had, the ruling by the judges of the contest against plaintiff's contention.

in the absence of fraud (assuming further that the judges had power and jurisdiction in the premises), would have precluded plaintiff from successfully contesting such conclusion. Such is the effect of one of the instructions given by the court to the jury. By another instruction, which constitutes one of appellant's principal reasons for urging a reversal herein, the jury was told that actual notice to plaintiff was required as to any change in the rules, from which it would follow that defendant's attempted notice to plaintiff by the publication of the "Important Notice" in its newspaper would have no binding effect upon plaintiff. It is claimed that because plaintiff first acquired knowledge of the proposed subscription contest from the defendant's newspaper, and because the printed rules of the contest provided that such rules might be amended, plaintiff was bound to take notice of any amendment to the rules which thereafter might be published in the newspaper in which the original offer appeared. Section 18 of the Civil Code provides that actual notice consists in express information of a fact, and that constructive notice is that which is imputed by law. By section 19 of the Civil Code it is provided that: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." It is therefore urged that if plaintiff had actual notice of the fact that the rules were likely to be amended, she was placed in possession of such facts and circumstances as would put her upon inquiry as to when, if at all, and if altered, in what respect, they were amended. The original rules contained neither an express declaration, nor anything from which it might reasonably be inferred, that any contestant for a prize under the subscription contest was either obliged, or was expected, to read possibly the whole of each and every edition of the newspaper thereafter published for the purpose of ascertaining whether or not any of the rules of the contest had been either modified or abandoned. Necessarily, from the nature of the enterprise, the several contestants would be required to be in constant touch with the management of the newspaper during the time that the contest was in progress. The relationship between the parties, considering the population of the city (a city of the sixth

class) wherein the newspaper was published, and the sur-
rounding circumstances, would be of a very close personal na-
ture.   The contestants were not so numerous but that if any
changes in the rules of the contest were either contemplated,
or had been made by the management, the most natural thing
to have been anticipated by each of the parties to the con-
tract would have been an actual notification thereof, rather
than the impersonal method of publication in a newspaper.
[5]   A statute requiring that a notice shall be given, but
which is silent as to the manner of giving such notice, con-
templates personal service thereof.   (29 Cyc. 1119.)   It is
said in the case of *Stockton Automobile Co.* v. *Confer*, 154
Cal. 408 [97 Pac. 884]: "It may be broadly stated that
where a statute or contract requires the giving of notice, and
there is nothing in the context, or in the circumstances of
the case, to show that any other form of notice was intended,
personal notice will be required.   (21 Am. & Eng. Ency. of
Law, p. 53, and cases.)   This is true because the law always
favors a personal notice, and *countenances substituted and
constructive notices as matters of necessity or extreme ex-
pediency.*   But the principle is not that personal notice must
always be given, but that it must be given where, from the
nature of the statute or contract—from the nature of the
case in short—it appears that no other notice is contem-
plated."   With reference to newspaper notices, the following
statement of the law occurs in 21 American & English Ency-
clopedia of Law, page 586: "A notice, advertisement, or
other statement published in a newspaper, if not made pur-
suant to some statute or judicial order so as to have the legal
operation of notice regardless of want of actual knowledge
by the person to be charged, does not of itself afford implied
or constructive notice to a person who is a subscriber to or
habitual reader of that newspaper.   In order to charge such
person with notice of the fact or statement published it must
be proved that he actually read it; in other words, actual
notice must be shown."
[6]   In the instant case plaintiff testified that she was
not personally notified of the change in the rule to which
reference has been had, nor did she see or read the "Im-
portant Notice" published by the defendant in its news-
paper; and although there was a conflict in the evidence with
reference to personal notification of plaintiff by defendant's

manager to the effect that the rule had been modified so as
to require cash, or a money order, or a certified check to
accompany each subscription to the newspaper, the verdict
by the jury in favor of plaintiff constitutes a finding in
plaintiff's favor as to such disputed fact.

' The bald effect of the legal proposition, as advanced by
the appellant, is that defendant laid down certain conditions,
which plaintiff was at liberty to either accept or to reject, as
she saw fit; and thereafter, assuming plaintiff's acceptance,
the defendant had the right to modify the terms of the con-
tract in any way it chose, whether lawful or unlawful, and
which modification might either seriously impair or entirely
destroy plaintiff's rights theretofore acquired by her under
the terms of the contract; and notwithstanding which, the
decision by the defendant or its chosen representatives re-
garding plaintiff's rights in the premises would be "absolute
and final."

[7]   While the rules provide that "The Chronicle guaran-
tees fair and impartial treatment to all candidates, but should
any question arise the decision of the *management* will be
absolute and final"; and while no question is apparently
raised regarding the power of the judges of the contest, as
distinguished from the "management" to supervise the con-
test and to determine to whom the several prizes should be
awarded, nevertheless the authority of the "management" or
of the judges of the contest could not be so used as to de-
prive plaintiff of her legal rights.   Assuming that the judges
of the contest acted in the highest good faith with reference
to their determination of the facts relative to plaintiff's
rights in the premises, they possessed no authority to decree
that plaintiff should not have that to which she was legally
entitled.   For the judges to be enabled to declare that by
reason of the "Important Notice" having been published in
the newspaper, plaintiff was obliged to comply with the terms
thereof, whether she ever saw the notice or not, would be to
empower the judges to determine the case against plaintiff
contrary to the law.   [8]   If she received no personal notice
of the change in the rules (and the jury so found on the
evidence), neither the defendant nor its "management" could
rightfully take away from her that which she had earned
under the terms of the contract, even though the defendant
had contemplated by another provision of the contract to

make the decision of the "management . . . absolute and final." [9] It certainly cannot be lawful for one party to a contract, even by express terms thereof, to provide, in advance of any controversy growing out of the contract, that his judgment of the law regarding any question which may arise shall preclude the other party to the contract from contesting the same in a court of law or equity. In this case the newspaper was owned by a corporation; and Mr. Perrin, who was the president and manager of the corporation, had absolute control thereof. It was he who selected the judges of the contest. Plaintiff was not consulted with reference thereto, nor did she have any voice in their selection. The substance of the contract is that the newspaper said to plaintiff and to the other contestants that it would treat them all fairly, but that if any contestant thought he had a grievance of any sort, whether of fact or law, or both fact and law, "the decision of the management will be absolute and final." By "the management" plaintiff may have understood that the manager of the newspaper, or the campaign manager of the contest (Mr. Stott), was intended. However, it is stated in another part of the rules of the contest that "to insure absolute fairness in the awarding of prizes, the race will be brought to a close under 'sealed ballot box' system and will be under the *personal supervision* of two or more judges from the Advisory Board." What the "advisory board" was, or of whom it consisted, or whether it had any existence in fact, is not shown either in the rules of the contest or in the evidence taken at the trial. Neither does it appear that the judges were selected from any board, whether advisory or otherwise. At any rate, the judges of the contest who were to settle any controversy, whether of fact or of law, or both of them combined, which might arise as between any of the contestants and the defendant, were to be "hand-picked" solely by the defendant. The tribunal, if it may be so called, was entirely one-sided. It was as though the defendant's manager had constituted himself the sole judge of all questions which might arise in the matter, whether of law or of fact, with the provision that from his decision upon all such questions there should be no appeal. But the rules do not contain such a statement either in substance or in effect. The provision with reference to the judges is that "the race . . . will be made under the *supervision* of two or

more judges from the advisory board''—that is, that the judges should have a general oversight of, or superintendency over, or right of inspection of, the contest. **[10]** There is nothing to show that the judges were selected according to the terms of the contract, nor that they constituted the ''management'' as provided by the rules; and consequently, even conceding the right of *some* judges, under proper circumstances, to decide the controversy, no authority or jurisdiction is shown in the judges who did decide it. It may be admitted that an arbitration board, legally selected, would have possessed power and jurisdiction, but here was a board selected by one of the parties to the controversy from an unknown source, and, so far as disclosed, not in accordance with the rules of the contract, deciding not merely questions of fact, but questions of law as well. The judges may have done their best, but their decision should not be binding upon plaintiff.

The evidence does not show that the two checks aggregating the sum of $48 were returned or offered to be returned to plaintiff to be dealt with by her as she might desire. But, to the contrary, the defendant at all times retained those checks in its possession during the pendency of the controversy between plaintiff and the defendant, cashed the two checks and appropriated the money so received to its own use; thus establishing the fact that the two checks, from a money standpoint, were not only satisfactory to the defendant, but that they were in all respects the equivalent of ''cash, money order, or certified check'' required by the ''Important Notice.'' The defendant received exactly the same benefit from the two checks as it would have received had cash been deposited in lieu of the checks. In the circumstances, no money or property loss of any sort could have ensued to the defendant or to any of the other persons interested in the contest by reason of the two checks being considered as identical with so much cash. **[11]** On the other hand, the defendant having accepted the two checks, and having received the cash represented thereby, and being financially benefited to that extent, was in no position to urge compliance with the belated rule of which plaintiff had neither actual nor constructive notice.

**[12]** From what has been said herein, it follows that no error was committed by the trial court in instructing the

jury concerning the subject of notice, to the effect that plaintiff was entitled to actual notice regarding any change in the rules governing the contest.

[13] Appellant complains of error on the part of the court arising out of the fact that after all the evidence in the case had been introduced and counsel for the defendant had declared in open court that after the jury should be excused he desired to make a motion for a directed verdict, the judge, in the presence of the jury, stated, ''I will overrule it'' (referring to counsel's proposed motion). But it is apparent that, considering the fact that the jury was present when counsel for defendant made the motion, whether present or not when the motion was ruled upon by the court, would make no difference, for the reason that if the jury had been excused from the courtroom at the time the ruling was actually announced by the court, upon the return of the jury to the courtroom and the jury being thereafter permitted to continue with its consideration of the case, would have indicated to the mind of any member of the jury who thought about the matter at all that the motion had been denied; and accordingly the same result would have been reached.

[14] Appellant makes further complaint of the action of the court in orally advising the jury after its retirement from the courtroom at the close of the trial and upon its subsequent return thereto for the purpose of procuring further instructions from the court, that the jury must find for plaintiff either in the sum of $1,995 or nothing. At the time referred to, the reporter's transcript shows that the following occurred:

''The Court: Gentlemen of the jury, the bailiff of the court said you wanted to see the court for some purpose.

''Juror: Your Honor, we wish to ask you whether it is under the jurisdiction of the jury to set any other amount besides the supposed value of the car at that time, which as we understand was $1,995.

''The Court: That is the amount that is admitted in the answer as the approximate value of the car.

''Mr. Cooney (Attorney for the Defendant): Yes, sir.

''The Court: You can't take into consideration what someone thinks about the value of the cars.

''Juror: It would have to be that or nothing.

''The Court: Either that for the plaintiff or nothing.

"Juror: We wanted to be sure it read that way.

"Mr. Childers (Attorney for Plaintiff): She is entitled to $500 in any event. The pleadings show she was entitled to and was tendered $500, and they still tender it to her. The pleadings say that. She isn't entitled to $500 and the automobile both.

"Juror: Have we got any right, your Honor, to make a fifty-fifty proposition of those damages?

"The Court: No.

"Juror: Then she has got to have an automobile, and that is the way of it."

By the answer of the defendant it was specifically admitted that the value of the automobile in question was the sum of $1,995. Such being the case, the question of value of the automobile was not one for the jury to determine. From a consideration of the conversation which took place among the members of the jury, the court and counsel representing the respective parties to the action, it is apparent that the jury wished to compromise the matter by returning a verdict that the automobile was worth less than the value thereof as admitted by the defendant; or, in the words of one of the jurors, "to make a fifty-fifty proposition of those damages." Under the pleadings in the case and as a matter of law, plaintiff was entitled either to a verdict for $1,995 or nothing, with the exception that she might in any event be entitled to a verdict for $500, representing the third prize in the contest. But it is clear that no question existed in the minds of the members of the jury respecting the third prize. The questions by the jury indicated that the jury was considering solely its right to find for plaintiff and then "to set any other amount besides the supposed value of the car at that time, which as we understand was $1995." Considering the circumstances, we think no prejudicial error was committed by the court in connection therewith.

[15] It is finally urged by appellant that the trial court erred in refusing to permit plaintiff to testify on cross-examination by counsel for the defendant as to how much money and how many checks for subscription were "turned in" by her on the last week of the contest. It is not difficult to understand that such evidence was material in that it might have been used as a basis for determining whether or not plaintiff had followed the rule requiring either "cash,

money order, or certified check'' on all other occasions during the period that the rule was enforced, and ultimately going to the point of plaintiff's knowledge of the rule. But it appears from the record that immediately preceding the question with reference to how much of the subscriptions was paid in cash, plaintiff had testified that she had handed in a great number of subscriptions during the last week of the contest. Immediately following the question to which such objection was made, plaintiff was asked: ''Q. Was the balance of the money representing the subscriptions over and above these two checks in cash? A. Yes, sir, I think they were.''

It therefore is apparent that, with the exception of the two checks in question, cash was paid for all such subscriptions, and consequently that defendant obtained everything which it sought, other than an answer to the question of the amount of cash which was ''handed in'' by the plaintiff; and as to the refusal of the court to permit the witness to testify thereto, we are unable to perceive any prejudicial error.

The judgment is affirmed.

Conrey, P. J., concurred.

CURTIS, J., Concurring.—Plaintiff had actual notice of the right reserved by defendant to amend the rules of the contest. She also, in my opinion, had actual notice that all rules of the contest, including any amendment thereof, would be published in the newspaper conducted by defendant. As a prudent person, I think she was put upon inquiry as to what amendments, if any, might be made and published. She therefore had constructive notices of all amendments made by the defendant and published in its paper, including the ''Important Notice.'' Having constructive notice of the amendment, she was bound thereby. The defendant, however, in cashing her checks, uncertified, and appropriating the money received thereon to its own use, waived the rule requiring that all checks accompanying subscriptions be certified. The plaintiff was, therefore, entitled to credit for the subscriptions covered by the two uncertified checks.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by. the supreme court on September 15, 1924.

Myers, C. J., dissented from order denying hearing.