**CINEMATECA URUGUAYA, a Uruguayan Organization; Kathy Saavedra, an individual; and Adolfo Aristarain, an individual, Plaintiffs,**

v.

**The ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, an entity of unknown business form, Defendant.**

**No. CV 93–1270–AAH.**

United States District Court, C.D. California.

April 26, 1993.

Nunc Pro Tunc March 9, 1993.

**324**

Vincent H. Chieffo, Edward S. Labowitz, P. Kevin Morris, Gipson, Hoffman, & Pancione, Los Angeles, CA, for plaintiffs.

John B. Quinn, David W. Quinto, Quinn Emanuel Urquhart & Oliver, Los Angeles, CA, for defendant.

**ORDER DENYING PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION**

HAUK, Senior District Judge.

### I. *FACTS AND BACKGROUND*

On August 20, 1992, the Academy of Motion Picture Arts and Sciences (the "Academy") invited Uruguay, along with several other foreign countries, to submit films for consideration for the 1992 Oscar nomination for Best Foreign Language Film. In response, the director of Cinemateca Uruguaya ("Cinemateca"), Manuel Martinez Carril ("Carril"), submitted "Un Lugar En El Munda" ("A Place in the World") (the "Film") as Uruguay's entry for the Oscar. Pursuant to the Academy's Special Rules for the Best Foreign Language Film Award (the "Rules"), Carril also certified that creative talent of Uruguay exercised creative control of the Film. Along with his submission, Carril sent a publicity flyer that heralded the Film as "[t]he best Argentine cinema" and described the Film's setting in the mountains of Argentina. The Academy apparently did not take note of the flyer at this time.

On February 17, 1993 the Academy announced at a press conference that the Film had been nominated for the Oscar. Almost immediately following this announcement, however, several members of the Latin American press asked the Academy's representatives why it had accepted an Argentine film as a Uruguayan submission. Subsequently, the Academy learned by studying the flyer as well as their own investigation that Adolfo Aristarain ("Aristarain"), an Argentine citizen and resident, directed, wrote, and co-produced the Film. Further, the Academy learned that only two individuals among the creative talent claimed any connection with Uruguay. One of the main actors, Gaston Batyi ("Batyi") claimed dual Uruguayan/Argentine nationality. The second individual, Kathy Saavedra ("Saavedra"), Aristarain's wife, was an Uruguayan citizen. Saavedra was the Film's costume director and contributed to the Film's original story. The Academy determined that neither Saavedra or Batyi's connections to Uruguay nor their contributions to the Film were enough to constitute creative control by Uruguayan creative talent, especially in light of the high degree of control exercised by Aristarain, who claimed no ties to Uruguay.

On February 25, 1993, the Academy disqualified the Film from consideration for the Oscar and revoked the Film's nomination. The Academy explained that it had deter-

mined that creative talent of Uruguay did not exercise creative control of the Film, in violation of the Rules.

On March 4, 1993, Cinemateca, Aristarain, and Saavedra (collectively, the "Plaintiffs") brought an Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Plaintiff's Ex Parte Application"). Plaintiffs ask this Court to enjoin the Academy from revoking the nomination. This Court denied the temporary restraining order on March 5, 1993. This Court then held a preliminary injunction hearing on March 9, 1993.

## II. *DISCUSSION*

### Standard of Review

■ An award of injunctive relief is appropriate where the plaintiff demonstrates that (a) it has at least a fair chance of success on the merits; (b) there is a significant threat of irreparable injury to plaintiff; (c) the risk of irreparable injury to plaintiff if the injunction is denied exceeds the foreseeable hardship to defendant if it is granted; and (d) granting the injunction is in the public interest. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 87–88 (9th Cir.1975). Some courts in this Circuit apply an alternative test where the plaintiff must show (1) the existence of serious questions going to the merits; and (2) that the balance of hardships tip in plaintiff's favor. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

### 1. *Success on the merits.*

■ Plaintiffs argue that they have at least a fair chance of succeeding on the merits. This argument rests on Plaintiffs' theory that the Academy's solicitation and acceptance of the Film as an entry for nomination for Best Foreign Language Film, combined with the Academy's actual nomination of the Film, created a contract between the Academy and Plaintiffs. Plaintiffs further argue that the Academy breached this "contract" when it revoked the Film's nomination.

This Court, however, agrees with the Academy that an Oscar is an award and not a contest where a contract arises between con-

test entrants and the sponsor. An award is retrospective in nature. While contests compel a particular act from the contestant, an award or nomination for an award (i.e., the Oscar) recognizes an achievement (i.e., a film) that was accomplished not for a contest, but for independent reasons. Courts have recognized that contracts arise between contest entrants and sponsors, but "the case [is] different if an award [is] made in recognition of past achievements ... out of affection, respect, admiration, charity or like impulses." *Robertson v. United States,* 343 U.S. 711, 713, 72 S.Ct. 994, 996, 96 L.Ed. 1237 (1952). Therefore, Plaintiffs are not likely to succeed on their contract theory.

■ Further, even if a contract had arisen in connection with the nomination of the Film, this Court does not find a breach. If, as Plaintiffs argue, the Academy Awards are a contest giving rise to a contract, the Rules form part of the contract. *See, e.g., Long v. Chronicle Pub. Co.,* 68 Cal.App. 171, 173, 228 P. 873 (1924). Under the Rules, Uruguayan creative talent had to exercise creative control over the Film. This Court agrees with the Academy that, based on the facts before the Court, Uruguayan creative talent did not exercise creative control of the Film. Therefore, the Academy did not breach any contract by revoking the nomination, because the Film did not qualify as a Uruguayan submission.

■ Finally, Plaintiffs argue that the Academy is estopped from revoking the nomination. Estoppel requires proof of five elements: (1) a representation or concealment of material facts; (2) made with knowledge, actual or virtual, of the facts; (3) to a party ignorant, actually or permissibly, of the truth; (4) with the intention, actual or virtual, that the latter act upon it; and (5) the party must have been induced to act upon it. *Wood v. Blaney,* 107 Cal. 291, 295, 40 P. 428 (1895). None of the required elements is present here. First, the Academy does not appear to have misrepresented anything to Plaintiffs. Second, Plaintiffs were not ignorant of the true facts regarding the Film and its attributes. Finally, there is no evidence before this Court to indicate that Plaintiffs

relied on the Academy's conduct to their detriment. In fact, Plaintiffs appear to have benefitted from the nomination of the Film.

In sum, Plaintiffs are unlikely to succeed on the merits for the reasons already discussed. Correspondingly, Plaintiffs have failed to show the existence of serious questions going to the merits. Therefore, Plaintiffs' request to enjoin the Academy from revoking the nomination must fail under both the traditional and alternative tests for injunctive relief.

### 2. *Balance of hardships.*

Plaintiffs urge this Court to consider the risk of irreparable injury to Plaintiffs if the Academy is allowed to revoke the nomination and forever disqualify the Film for an Oscar. The Court understands, of course, that the Academy's actions, left standing, will strip Plaintiffs of the financial and professional opportunities that follow an Oscar nomination, as well as the chance to win the Oscar itself. The Court, however, does not view this as irreparable harm, since the Film does not qualify as an Uruguayan submission under the Rules for the reasons already discussed above. In spite of this, Plaintiffs will benefit from the Film's increased marketability due to the period the Film was nominated.

This injury, however, must be balanced against the hardship to the Academy if this Court were to intervene and force the Academy to reinstate the nomination. The Academy was established by film industry leaders in 1927 to promote the motion picture arts and sciences. *Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1449 (9th Cir. 1991). The Academy Awards ceremony is meant to recognize industry artists for outstanding achievement in their respective fields. *Id.* This Court's intervention would diminish the Academy's autonomy and discretion in carrying out these functions. Further, the Academy argues that there are significant administrative burdens involved in reinstating the nomination such as reprinting ballots, postponing voting, and arranging for last minute screenings of the Film.

Overall, the foreseeable hardships to the Academy tip the balance against Plaintiffs. Plaintiffs have not shown that the risk of irreparable injury to them if the injunction is denied exceeds the foreseeable hardship to the Academy if the injunction is granted. Neither have Plaintiffs shown that the balance of hardships tip in their favor. Therefore, this Court must deny Plaintiffs' request for injunctive relief.

Based on the foregoing, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiffs' request for a preliminary injunction is **DENIED** with prejudice.

2. It appearing conclusively that there are no allegations or facts upon which to support or tend to support a final injunction or any injunctive or declaratory relief whatsoever, the Court hereby dismisses with prejudice the complaint and each and every cause of action therein alleged.