OPINION OF THE COURT
Herman Cahn, J.
Comedian Jackie Mason (Mason) demands $75 million in compensatory and punitive damages — plus costs — for defendants’ refusal to categorize his one-man topical comedy "Jackie Mason: Politically Incorrect”, as a "play” eligible for a Tony award in the 1993-1994 Broadway season. Politics aside, Mr. Mason is "Legally Incorrect”. The motion of defendants American Theatre Wing, Inc. (Wing), the League of American Theaters and Producers, Inc. (League), and the Dramatists Guild, Inc. (Guild) to dismiss the complaint or for summary judgment (CPLR 3211) is granted.[1]
BACKGROUND
The Antoinette Perry (Tony) Awards are awarded annually for excellence in the theatre in certain categories of achievement. The presentation ceremony is administered by Tony Award Productions (Productions), which is a joint venture of League and Wing. Under Wing’s rules and regulations (the *434 Tony Rules), eligibility for nomination is determined by the Tony Awards Administration Committee (the Committee), a self-governing body established by Productions. The Committee is comprised of 24 individuals designated by Wing, League, Guild, Actor’s Equity Association, United Scenic Artists and the Society of State Directors and Choreographers.[2]
Tony rule 4 (a) lists the categories in which "regular” Tonys may be awarded. Most category names specifically refer to either a "play” or a "musical”, e.g., "Best Play”, "Best Musical”, "Best Performance by a Leading Actress in a Play”, etc. A number do not contain those terms (e.g., simply "Best Costume Design”, "Best Choreography”), but the omission is apparently not significant. Other rules also contain references to "plays or musicals”, clearly implying that those are the only types of productions eligible for regular Tonys. However, rule 4 (c) and (d) provide for discretionary "Special Tony Awards”, which may be granted to "a theatrical event * * * which does not fit into any existing Tony Award category”, as well as for "lifetime achievement in the theatre”.
Tony rule 2 sets forth the six requirements a production must satisfy to be eligible in the "various categories”. The Committee must determine that the entrant is "a legitimate theatrical production”, but definitions of "play” or "musical” as used in the "various categories” are not provided. Also, as is relevant here, rule 2 (v) requires the producer of a production seeking consideration to invite and provide free tickets to all eligible Tony voters, and to certify in writing to the Committee that the invitations were extended in the manner and number prescribed by the rules. The remaining eligibility requirements relate to minimum theatre size and opening date cutoffs.
Regardless of a shaw’s eligibility, the Committee still retains discretion to determine "whether a sufficient number of eligible candidates exist in quality or quantity to merit the granting of an Award in the applicable category for the current season” (Tony rule 2 [j] [A]). Similarly, it has "sole discretion to reduce the number of nominees to fewer than four * * * in a particular category for the current season”. (Id.) Finally, rule 1 (a) provides that "[a]ll decisions of the [Committee] *435 concerning eligibility for the Awards and all other matters relating to their administration and presentation * * * shall be final”.
Mason has presented one-man topical comedy performances on Broadway since at least the 1986-1987 season, when he starred in "The World According to Jackie Mason”. He accepted a Special Tony Award for "Excellence in the Theatre” that year, but the production was apparently deemed ineligible for a regular Tony because it was not considered a play or musical. Mason did not challenge that determination, nor a similar one made concerning his show "Jackie Mason: Brand New”, in 1990.
"Jackie Mason: Politically Incorrect” opened on April 5, 1994. On April 7, 1994 the Committee met and determined that the show was not eligible for a Tony because, inter alla, like his previous productions, it was not a play or a musical. Mason did not object or take other action between that date and the presentation ceremony on June 12, 1994. The instant suit, for monetary damages only, was commenced on August 4, 1994.
THE COMPLAINT
The complaint seeks recovery under three theories. The first cause of action essentially challenges the disqualification as a corporate action and alleges that defendants "failed to apply objective and fair standards to allow plaintiff to be eligible for a Tony Award”. In particular, defendants "did not consider plaintiff’s one-man comedy show a proper Broadway production for a Tony Award * * * although several other one-man shows had been considered for a Tony Award in the past”. Additionally, Mason complains that "defendants and their designees maintained rules and categories of eligibility which discriminated against one-man shows”.
The second cause of action formalizes this latter claim of discrimination, relying on an unspecified section of the Human Rights Law to allege a "violation of [plaintiff’s] civil rights”. It alleges that "[t]he establishment of categories, which excluded [the] one-man show of plaintiff, was a form of discriminated [sic] against plaintiff who otherwise qualified for consideration for a Tony Award” and that defendants "wrongfully discrimination [sic] against plaintiff in his employment by eliminating his one-man show from fair consideration”.
The third cause of action sounds in contract. Mason claims *436 that the publication of defendants’ eligibility rules "constituted an offer to the plaintiff and to other performers who were similarly situated for consideration for a Tony Award”. Plaintiff asserts that his participation in the process was an "acceptance”, and that defendants breached the agreement by wrongfully refusing to consider him as eligible for a Tony.
DISCUSSION
The courts, of course, do not usually decide who is eligible to receive a Tony, or to whom one should be awarded. This suit could be dismissed out of hand if Mason were simply complaining that his show "deserved” to win a nomination or trophy on its merits. As noted in a related context, "Most honors are alike in that some individual or committee must review what someone has accomplished and make a subjective judgment of whether that conduct is deserving of reward or recognition. Inherent in such a system is the possibility of error. If Paul Newman (The Verdict) 'wins’ the academy award instead of Dustin Hoffman (Tootsie), who is to say that he is really more deserving?” (Karnstein v Pewaukee School Bd., 557 F Supp 565, 567 [ED Wis]; see also, Dangler v Yorktown Cent. Schools, 771 F Supp 625 [SD NY].)
The precise issue here, however, is one step removed from the highly subjective process of selecting a Tony winner. It concerns the corporate defendants’ application of the internal, published threshold requirements regarding eligibility, not the ultimate determination of which shows are "better” or "best”. Defendants’ status as the conferrers of a highly publicized entertainment industry award does not immunize them from the normal rules of corporate or organizational governance, although the scope of judicial review of such private sector decisions is extraordinarily narrow.
Accordingly, while the court agrees that Mason’s discrimination and contract claims are to be dismissed out of hand, patently frivolous, the challenge under the Tony Rules could arguably state a claim. Nevertheless, defendants are entitled to summary judgment dismissing the complaint because they complied with their rules, within the scope of their broad, discretionary authority.

The Challenge to Defendants’ Corporate Action

The complaint does not specify the nature of this action, e.g., a derivative action or other civil suit. Primarily to ad *437 vanee a Statute of Limitations defense,[3] defendants categorize it as an article 78 proceeding. Although that procedure is more commonly applied to review challenges to public administrative agency decisions, it is also available to review the determinations of private, nongovernmental organizations (Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530 [corporate co-op board action]; Susan M. v New York Law School, 76 NY2d 241 [private law school]) and has been applied by at least one court in a dispute over whether a film warranted the "X” rating assigned to it by the Motion Picture Association of America (see, Miramax Films Corp. v Motion Picture Assn., 148 Misc 2d 1 [Sup Ct, NY County]). It is doubtful whether that framework is appropriate here, as Mason does not request a reversal of defendants’ decision, but only monetary damages not available under article 78 (CPLR 7806; Leisner v Bahou, 97 AD2d 860, appeal dismissed 61 NY2d 985; Rosario v Blum, 80 AD2d 511).
However, there is "no purpose in allowing the form of the action to dictate the substance of the standard by which the legitimacy of corporate action is to be measured” (Matter of Levandusky v One Fifth Ave. Apt. Corp., supra, at 541). Any damage award would necessarily be premised upon a finding that defendants breached some duty created by the Tony Rules. Thus, a standard analogous to the business judgment rule should apply (see, Matter of Levandusky v One Fifth Ave. Apt. Corp., supra, at 537), under which "the overriding concern is whether respondent acted in good faith in furtherance of its own legitimate purpose” (see, Miramax Films Corp. v Motion Picture Assn., supra, at 9). This "more limited” standard of judicial review precludes the court from substituting its own judgment for the wisdom of the corporate governing body (Matter of Levandusky v One Fifth Ave. Apt. Corp., supra, at 539).
All that is left, then, is the question of whether defendants had authority to decide that Mason’s production was not a *438 play. They most certainly did. The power to make final determinations regarding all matters of eligibility was expressly granted to the Committee by the Tony Rules, as was the discretion to award no Tonys at all. Further inquiry as to the wisdom of their action is precluded.
In an effort to raise the specter of bad faith, Mason avers that Lily Tomlin received a regular Tony (Leading Actress in a Play) in 1986 for "The Search for Signs of Intelligent Life in the Universe”. That solitary example is insufficient to demonstrate that plaintiff was the victim of discriminatory enforcement of the rules (see, Miramax Films Corp. v Motion Picture Assn., supra, at 8-9 ["(t)hat over the course of more than two decades a handful of films may have been as sexually explicit as (petitioner’s X-rated film) * * * and have obtained an 'R’ rating is not inherently arbitrary and capricious or without rational basis”]). In any event, plaintiff has made no showing that the Tomlin show was, in fact, a topical comedy show, or that the Tony rules were the same in 1986 when Lily Tomlin was awarded a regular Tony (the current rules "for the 1993-94 Season”). Moreover, defendants have provided numerous examples of comedy routines which were disqualified because they were not plays (Spaulding Gray’s "Gray’s Anatomy”, 1993-1994; Victor Borge, 1989-1990; Robert Klein, 1988-1989; Mort Sahl, 1987-1988; Whoopi Goldberg, 1984-1986) and musicians whose shows were not deemed musicals (Michael Feinstein, 1987-1988, 1988-1989, 1990-1991; Barry Manilow, 1988-1989; Mandy Patinkin, 1989-1990; Stephanie Mills, 1989-1990; Harry Connick, Jr., 1990-1991; Tommy Tune, 1992-1993; Raffi, 1992-1993; Tony Bennett, 1992-1993; Jackson Browne, 1993-1994), demonstrating a rationality and consistency that would pass muster regardless of the burden of proof or standard of review.

The Discrimination Claim

The flaws in Mason’s theory that defendants discriminated against one-man shows are obvious. To begin with, a "one-man show” does not fall within any of the protected categories enumerated in the Human Rights Law (see, Executive Law § 296), as the alleged discrimination relates to number (one) rather than gender (man). Next, the statute protects only "individuals” not "shows”. The proscribed activities relate only to employment, housing and credit, and it is not alleged that any defendant has employed, lodged or financed *439 Mr. Mason. The argument that by failing to award him a regular Tony, the defendants damaged plaintiffs employment, is specious. Beyond all this, defendants have demonstrated that they do not discriminate against one-person shows so long as they qualify as plays (e.g., "Edmund Kean” with Ben Kingsley; "Tru”, with Robert Morse; "Shakespeare for my Father” with Lynn Redgrave; "Twilight: Los Angeles 1992” with Anna Deveare Smith; "Miss Margarida’s Way” with Estelle Parsons).
Mason’s attempt to expand the realm of protected classes from human beings experiencing discrimination to Broadway shows suffering from Tony-deprivation, seems more appropriate as a target for his act than as fodder for a lawsuit.

The Contract Claim

By way of either praise or disparagement, the parties label Mason’s claims as "novel” or "of first impression”. However, the contract claim is not. In Cinemateca Uruguaya v Academy of Motion Picture Arts & Sciences (826 F Supp 323 [CD Cal 193]), the Academy of Motion Picture Arts & Sciences revoked an Oscar nomination for Best Foreign Language Film upon discovering that the allegedly Uruguayan submission was primarily an Argentinean creation. The plaintiff argued that the Academy’s acceptance of the film as an entry for nomination, together with the actual nomination, created a contract between the parties. In language equally applicable here, the court rejected that theory: "This Court * * * agrees with the Academy that an Oscar is an award and not a contest where a contract arises between contest entrants and the sponsor. An award is retrospective in nature. While contests compel a particular act from the contestant, an award or nomination for an award (i.e., the Oscar) recognizes an achievement (i.e., a film) that was accomplished not for a contest, but for independent reasons. Courts have recognized that contracts arise between contest entrants and sponsors, but 'the case [is] different if an award [is] made in recognition of past achievements * * * out of affection, respect, admiration, charity or like impulses.’ * * * Therefore, Plaintiffs are not likely to succeed on their contract theory.” (Supra, at 325 [citations omitted].)
The court also noted that even had the nomination created a "contract” under the contest theory, the Academy could not be found liable for a breach because the film did not qualify *440 under the Academy’s Special Rules. (Supra.) Here, apart from the fact that Mason’s show was never nominated and did not qualify as a play, Mason failed to comply with the Tony Rules in other respects. Although it appears, contrary to defendants’ argument, that plaintiff complied with rule 2 (a) (v) regarding the distribution of free tickets to Tony voters, his producer did not certify in writing as to that fact as mandated by rule 2 (a) (vi). Certification is one of six separate and distinct requirements of the eligibility process under rule 2, and rule 2 (a) specifically provides that "all of the following six requirements must be satisfied” (emphasis supplied).
Accordingly, it is ordered that the motion to dismiss is granted and the complaint is dismissed.

. By order of February 6, 1995, this court granted plaintiffs motion to discontinue the action as against defendants Actors Equity Association and United Scenic Artists. The remaining defendant, the Society of Stage Directors and Choreographers (sued as Stage Directors and Choreographers), was never served.

. Defendants have also moved to dismiss on the grounds that plaintiff failed to join the individual Committee members actually responsible for the adverse determination. Without deciding whether it was enough to name the organizations who designated the members, the court declines to dismiss on a technicality which could probably be easily cured through amendment.

. CPLR article 78 proceedings are governed by a four-month Statute of Limitations (see, CPLR 217). Defendants argue that because their eligibility determination was made on April 7, 1994, the action was untimely because service was not made until August 18, 1994, 10 days after the August 7 deadline. However, this overlooks the fact that the complaint was filed on August 5, 1994, the act triggering "commencement” for both actions and special proceedings (see, CPLR 304). Plaintiff thereafter had 15 days to perfect the filing through service (see, CPLR 306-b [b]), or until August 22, 1994.