[Crim. No. 48.   Third Appellate District.—June 20, 1907.]

In re WALTER ACKERMAN  on Habeas Corpus.

MUNICIPAL ORDINANCES—REPEAL BY IMPLICATION—DOG ORDINANCE—LICENSE TAX ON BUSINESS.—A municipal ordinance licensing and regulating the ownership of dogs within the limits of a city is not inconsistent with a later ordinance the purpose of which is to license for revenue and regulation every kind of business carried on within the city, and the former ordinance is not repealed by implication by the latter.

ID.—GRANT OF POLICE POWER BY POLITICAL CODE.—Such dog ordinance is not repealed by implication by the provision in section 3366 of the Political Code as amended in 1901, authorizing supervisors of counties and legislative bodies of cities and towns, in the exercise

of police power, and for regulation, to license every kind of business within their limits.

ID.—GRANT OF POLICE POWER BY CONSTITUTION.—Counties, cities and towns are not required to look to any legislative enactment for the source of their police power; but the constitution has by direct grant, in section 11 of article XI thereof, vested in them plenary power to establish and enforce such police, sanitary and other local regulations as they may determine necessary for the welfare of their inhabitants, which do not conflict with general laws. The legislature cannot limit the exercise of this power so long as it does not conflict with any general law of the state.

ID.—DOG ORDINANCE A PROPER EXERCISE OF POLICE POWER—REASONABLENESS.—*Held*, that the provisions of the dog ordinance in question are not unreasonable, uncertain, or ambiguous in terms, nor oppressively burdensome; but that it represents only a wholesome and salutary exercise of the police power. The owner of the dog is fully protected, if he procures the license and complies with the law, nor can it be presumed that the marshal will commit infractions of the law.

ID.—LICENSE TAX ON DOGS—INCIDENT TO MANAGEMENT AND CONTROL—PENALTY—POLICE POWER.—A license tax on dogs may be imposed as an incident of the regulation of their management, control or use. An ordinance providing that the owner of the dog upon the payment of the required license tax shall attach to the collar worn by the dog a seal or device as evidence of the ownership of the dog, and of the payment of the license tax, and providing for the enforcement of a penalty for noncompliance with the law, and also for the destruction of dogs which bear no collar as required, is an exercise of the police, and not of the taxing, power.

ID.—POLICE POWER NOT DEPENDENT ON OWNERSHIP OF DOGS.—The exercise of the police power to regulate the management and control of dogs, within city limits does not depend upon the question whether dogs are full property in this state or not, where they are allowed to run at large within such limits. An ordinance regulating the use and management of dogs within city limits does not restrict or interfere with their ownership, if the owner complies with the ordinance. It only involves the familiar principle that every person must so use his property as not to injure the rights of other persons or of the public.

PETITION for discharge upon writ of *habeas corpus* to the city marshal of the city of Ukiah.

The facts are stated in the opinion of the court.

J. W. Preston, for Petitioner.

A. J. Thatcher, for Respondent.

HART, J.—The petitioner was arrested and is detained in custody by the city marshal of the town of Ukiah, under a warrant of arrest issued upon a complaint filed in the recorder's court of said town, charging him with a misdemeanor under the provisions of an ordinance designated and known as "Ordinance No. 15" of said city of Ukiah, passed by the board of trustees thereof on the fourteenth day of November, 1887. It is alleged in the petition for the release of petitioner upon *habeas corpus* that the complaint upon which the warrant of arrest was issued against the prisoner "does not state a public offense or any offense whatever either against the laws of the State of California or against any or either of the ordinances of the town of Ukiah City." Among the particular objections urged against the ordinance, the provisions of which petitioner is charged with having violated, is the contention that said ordinance "is invalid and void for the reason that the same has been repealed by section 3366 of the Political Code and also by the provisions of Ordinance No. 119 of said Ukiah City," and, furthermore, that said ordinance "is illegal and void for the reason that the same is ambiguous and uncertain upon its face and is also uncertain in its terms." The ordinance reads as follows, after the title and enacting clause:

"Section 1. Every person who owns or harbors a dog within the limits of the Town of Ukiah City, shall pay to the Marshal of said town an annual license therefor of two dollars.

"Sec. 2. It shall be the duty of the Marshal to collect the same, and to deliver to the person paying the same a license, which shall describe said dog, together with a seal or device impressed thereon, which the owner shall attach to a collar to be worn by said dog.

"Sec. 3. It shall be the duty of the Marshal to seize and impound any dog owned or harbored within the corporate limits of such town on which such license shall not have been paid.

"Sec. 4. At the end of two days, no person claiming said dog, and paying the license therefor, or producing a license showing previous payment for the then current year, the Marshal shall destroy and bury such dog.

"Sec. 5. Every person who shall willfully and knowingly violate this ordinance shall be guilty of a misdemeanor, and

upon conviction thereof shall be punished by a fine of not less than ten, nor more than fifty dollars, or by imprisonment not exceeding fifty days, or by both such fine and imprisonment.''

The sixth and last section of the ordinance provides that certain fees shall be paid to the marshal as compensation for the services which the ordinance requires him to perform in the matter of the enforcement of its provisions.

Section 3366 of the Political Code, as amended by the legislature of 1901, with whose provisions it is claimed that the ordinance under which the petitioner is held in custody is at cross purposes, authorizes ''boards of supervisors of the counties of the state, and the legislative bodies of the incorporated cities and towns therein, in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise,'' to license ''all and any kind of business not prohibited by law, and transacted and carried on within the limits of their respective jurisdictions,'' etc.

The purpose of ordinance No. 119 of the city of Ukiah, which was passed by the board of trustees of said city on the twentieth day of June, 1904, and which, it is contended, repealed the ordinance under consideration, may be shown by its title, which is as follows: ''To license, for the purpose of Revenue and Regulation, of every kind of Business authorized by law and transacted and carried on within the town of Ukiah City, and all shows, exhibitions and lawful games carried on therein. To fix the rate of license tax upon the same and to provide for the collection of the same by suit or otherwise.'' This ordinance then prescribes the amount of the annual license tax which shall be paid for carrying on and conducting the various kinds of businesses and occupations prosecuted within the corporate limits of said town of Ukiah. There is no attempt made by the last-mentioned ordinance to license or regulate the ownership of dogs within the municipal limits of said town, nor is there any reference whatever therein to those animals. As ordinance No. 15 and ordinance No. 119 deal with entirely and widely different subjects, we are unable to appreciate the force, if any it possesses, of the suggestion of counsel for the prisoner that the former ordinance has been repealed by the latter. There is no language to be found in ordinance No. 119 expressly repealing ordinance No. 15, nor are the subject matters of the two ordinances so correlated or connected as to impart to ordinance No. 119 the

effect of repealing by implication ordinance No. 15. The general object of the two ordinances is, it is true, the same—the regulation of certain matters of local concern to the municipal corporation and its members—but the particular subjects of regulation treated by the two ordinances are so diverse that, if one of them should in fact be repealed, and the other omitted to expressly provide for the licensing and regulation of the subject matters or occupations dealt with by the abrogated measure, such matters or occupations would be immune from interference by the local authorities (unless, of course, they should become nuisances by the manner of their operation) and could be maintained and prosecuted without a municipal license or other authorization from the corporation. It is scarcely necessary to suggest that the adoption of an ordinance licensing and regulating the business of a banker or a baker or a laundry could not operate, *per se,* to repeal an ordinance, previously passed, licensing and regulating the retail sale of intoxicating liquors. To accomplish the repeal of an ordinance or of a statute, there must either be language employed expressly declaring such intention, or there must exist in the subsequent ordinance or statute language so inconsistent with the provisions of the former as to necessarily effect a repeal by implication. The salient parts of the two must, in other words, be so incongruous and wanting in harmony as to make it impossible for the two to stand together.

Nor is there anything inconsistent between the provisions of the ordinance in question and those of section 3366 of the Political Code. Ordinance No. 15 was undoubtedly designed as and is one of police regulation, and the evident object of the section of the Political Code referred to, as amended by the legislature of 1901, is to restrict the power exercisable by boards of supervisors and of the legislative bodies of the incorporated cities and towns of the state, to impose license taxes, to the purposes of regulation only. But counties, cities and towns are not required to seek in any legislative enactment for the source of their power to make and enforce within their respective limits all local, police, sanitary and other regulations which they may deem needful and requisite for their welfare and that of their inhabitants. The constitution has, by direct grant, vested in them plenary power to provide and enforce such police, sanitary and other local·regulations as they may determine shall be necessary for the health,

peace, comfort and happiness of their inhabitants, provided such regulations do not conflict with general laws. (Const., art. XI, sec. 11.) And the legislature has no authority to limit the exercise of the power thus directly conferred upon cities, counties and towns by the organic law. The only test is, therefore, Do such regulations conflict with any general law of the state? If they do not, then they have binding authority upon all inhabitants of the city or county or town for which they are established upon all the subjects to which they relate and which legitimately come within the scope of the power granted by the constitution. (*Ex parte McClain*, 134 Cal. 111, [86 Am. St. Rep. 243, 66 Pac. 69]; *Ex parte Lacey*, 108 Cal. 326 et seq., [49 Am. St. Rep. 93, 41 Pac. 411].) Our attention has been directed to no general law, with the provisions of which the ordinance, whose validity is here challenged, is in conflict.

But the learned counsel for petitioner declares that the ordinance is unconstitutional because it is unreasonable and uncertain and therefore oppressively burdensome. The argument in support of this contention is that the ordinance does not fix any particular time at which the tax must be paid; that the words "current year," as used in the ordinance, are indefinite and uncertain as to the time when the tax shall be paid, and it is said that if it be meant by those words that the tax is to cover the period "from January 1st to December 31st, any person who became the owner of a dog on the thirty-first day of December, 1907, would be liable for the full amount of the tax, although he owned the dog less than a day, whereas, another person who owned the dog on January 1, 1907, would pay no more than he would." The unreasonableness of the ordinance is also found in the fact that it provides for the destruction of a dog upon which no license tax has been paid two days after the animal has been impounded, unless he has been redeemed, without notifying the owner of such contemplated destruction, and this is said to be the taking of property without due process of law. Other objections to the reasonableness of the ordinance are that it does not with certainty provide what specific acts shall constitute a violation thereof to thus render the violator amenable to the punishment prescribed therein; that it is uncertain in that it does not appear clear whether the accused must violate all or only a part of the provisions of the ordinance

before he can be adjudged guilty of a misdemeanor thereunder; that the ordinance authorizes the city marshal to commit a trespass by going upon the premises of a citizen without a warrant or other process and capture and take to the pound a dog upon which a license tax has not been paid. In short, no conceivable ground or reason upon which an objection could be urged against the validity of the ordinance has been overlooked. But a careful examination of the provisions of this local regulation does not, in our opinion, bear out or sustain any of the points which counsel has rather ingeniously attempted to maintain against the constitutional soundness of the measure, or against its validity for any reason. It is not only not ambiguous and uncertain in its terms, but its language is clear and unmistakable and easy of comprehension. Nor are its provisions ⸰and terms characterized by unreasonableness. On the contrary, the ordinance appears to represent only a wholesome and salutary exercise of the power of police. The purpose sought to be attained by the ordinance is not only commendable in the highest degree, but is of paramount importance to all communities possessing a considerable number of inhabitants. Common experience justifies strenuous opposition to (and wisely sanctions the curbing of) unbridled and, it may be added without facetiousness, unmuzzled liberty in the canine species, particularly in urban communities. Much has been written and spoken of the dog and his many noble qualities. It may truthfully be admitted that innumerable instances of the unflinching loyalty and faithfulness of that quadruped to his master or to a friend to whom he has become attached are recorded, and have justly inspired writers of intense and ardent natures and of vivid and lively imaginations to soar to supernal heights of eloquence and of poetic fancy in their descriptive song of the noble attributes of the dog. There can be nothing further from the purpose or disposition of the writer of this opinion to detract from or underestimate the worth of a good, conscientious, law-respecting dog—a canine content to remain at all times within the limits of his own bailiwick and there regale himself in an atmosphere of perfect ease and comfort, with frequent delightful excursions to the land of Hypnos, and at the same time ever alert to the highest interests of his master, and, generally speaking, scrupulously faithful to all the pacific and innocent pursuits which

have come within the curriculum of his education. There can be no doubt that many dogs, for their acts of heroism in saving human life or preventing injury to their masters when surrounded by appalling circumstances of danger, deserve a conspicuous place in poetry and song; but there is no inconsistency between this observation and the suggestion that when the poet, as, under the entrancing spell of ethereal dreams, in winged boat, he flits "from mount to mount through Cloudland," permits fancy to get the upper hand of fact and thus unconsciously wanders from concrete cases to abstractions in his perfervid panegyrics upon the canine, he slips far over and beyond even the boundary line established and tolerated by poetic license. It is, we think, safe to say that those writers who have written such glowing tributes to the dog in the abstract have never had any actual experience with a monstrous canine of the bull family, to which they were strangers. There is neither poetry nor senti-- ment in the dog, as a rule, especially when one meets him upon what he conceives to be his own preserves, for such an occasion is generally conceded to be an appropriate time to cast song and sentiment to the winds and to get busy by moving with all possible haste a comfortable distance beyond the danger line. But it must be admitted that there are really some good-tempered, well-behaved dogs, which are, it may be granted, quite useful in their way. But the other kind become good dogs only when they have ceased to be able to exercise the power of respiration.

At the common law, the dog was classed in the category of animals *ferae natura,* and many of them should be so classed now. We are safe in going further and declaring that the very best of them can, with less effort and in a shorter space of time, make themselves more of a nuisance to the square inch than any other domestic quadruped of which we have any knowledge. Even those having the good fortune to have received the fullest measure of civilizing care, nursing, petting and general disciplinary domestication, from puphood to the danger point of maturity, have not had the instincts of savagery inherited from their distinguished ancestrial relative and implacable enemy of the human race, the wolf, so mollified as to render them altogether disposed to maintain uniformly peaceful relations with the human family. For it may be accurately declared that nearly all dogs are friendly

only with their masters and immediate family, and that strangers, however honest and peaceful their intentions may be, are almost invariably treated by them as intruders, having no rights that a dog is compelled to respect. In these observations, though rather *dog*-matically asserted, we think no one of ordinary experience in the common, all-around affairs of this mundane sphere will hesitate to con-*cur*. If the killing by the marshal of a dog, without formally notifying the owner of the time and place of the proposed execution, is violative of the injunctions of our constitutions against the taking of property without due process of law, how much more flagrantly is that sacred fundamental principle outraged in the vicious act of an ill-tempered, snapping dog, which, without previous warning or other due notice and without provocation, wantonly deprives a human individual, who has never trespassed upon or otherwise invaded his rights, of a quantity of his avoirdupois! This suggestion is offered only in illustration of one of easily a hundred available reasons which could be advanced in support of a local legislative measure whose object is to regulate the ownership and consequently, as far as it can be done, the behavior of dogs.

To effectually accomplish this end, the owner of the dog, by the provisions of the ordinance under review, for the privilege of such ownership, is required to pay a license tax, or in default thereof must bear the penalty prescribed; or, in case the dog has no owner, or his owner does not think enough of him to pay the license, then the marshal may destroy him.

Many other reasons than those already suggested could be given why the ordinance here is not only reasonable but an important regulation. The dog is subject to hydrophobic fits, and the laceration of the flesh of a human by a dog thus afflicted will almost invariably inoculate such person with the poison of the malady, usually with a fatal result. And, too, as some of the cited authorities suggest, if a dog commits damage for which his owner may be held liable, such an ordinance as the one here would materially aid in the identification of the owner, assuming that he has paid the tax, and would, therefore, the better enable the injured party to invoke the rule of *respondeat superior!* But it is unnecessary to enumerate all the excellent and unanswerable reasons, any one of which is sufficient to sustain the policy and the necessity of such an ordinance. Every city, town and county

should have such a measure and give its provisions full, hearty and complete enforcement.

Certain of the complaints urged against the validity of the ordinance before us necessarily assume that the officers, in the enforcement of its provisions, will themselves commit infractions of the law. No such assumption or presumption can be indulged. Two modes of executing the terms of the ordinance are prescribed: 1. Where, because of failure or refusal to pay the license tax, the owner of the dog may be complained of in the city court, arrested upon a warrant and prosecuted in the manner prescribed by the law in all such cases; 2. Where the dog is found upon the public streets, bearing no proper evidence of the tax having been paid, the animal may be impounded and after two days from such impounding may, unless redeemed by the owner, be by the marshal destroyed. The marshal would, of course, have no right to go upon the private premises of a citizen upon an official mission without being "armed with process," except where, upon such premises, he might himself witness the commission of a crime.

The objection as to the time at which and the exact period for which the license is to be paid has no merit. As we understand the terms of the ordinance, the license tax of two dollars is to cover a calendar year, and it is, so far as the proposition may affect the validity of the ordinance, immaterial at what particular time it is paid. The illustration submitted by counsel in his effort to sustain his contention of the unfairness and unreasonableness of the ordinance, of where a person might become the owner of a dog on the 31st of December, 1907, and is forced to pay the license tax for the entire year just closing, suggests nothing militating against the reasonableness of the measure. The new owner or master of the dog in that case would have no license to pay for the year about to terminate if the previous owner had already paid the tax. If the previous owner had not done so, it would only be reasonable and just that the subsequent owner should do so, not only because the tax upon the dog is due from somebody, if there is and has been an owner, but also for the reason that a person who becomes, by purchase or gift, the owner of a dog upon which an authorized license tax remains unpaid, assumes, in acquiring rights under such ownership, the burden of any duty with reference thereto which the government,

under its power, may have seen fit to impose. There is nothing in the point that it is difficult to determine from the ordinance how much thereof—whether all or only a part—an accused person must violate before he may be adjudged guilty of a misdemeanor. It is as clear as language can make it that a refusal by a citizen owning or harboring a dog within the corporate limits to pay the license as required would bring his conduct within the penal purview of the ordinance. The regulation requires nothing else at the hands of such citizen than the payment of the license. There are certain provisions prescribing the duties of the marshal under the ordinance. The willful failure of that official to perform those duties would undoubtedly subject him to the penalty of a misdemeanor under the terms of the measure.

Counsel questions the purpose of the ordinance to be that of regulation because it contains no provision prohibiting the ownership of dogs within the corporate limits of the town. A conclusive answer to this unique suggestion is, first, that there is no power in municipal or other authorities to prohibit the ownership of dogs, no more than there is such power to prohibit the ownership of any other species of property; second, if such power existed, there certainly would be a striking incongruity between the clause prohibiting such ownership and the one licensing it.

The ordinance is, as we have declared, a reasonable and appropriate exercise of the power vested by the constitution in the cities, towns, counties and townships of the state.

The petitioner will be remanded.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 18, 1907, and the following opinion was then rendered thereon:

HART, J.—In his petition for rehearing, counsel for petitioner suggests that in the decision of the case we overlooked the main point upon which he relied, and misconceived his point "as to the force of section 3366, Political Code." The main point referred to, although stated by counsel in his petition in the nature of a number of queries, is briefly this: That the ordinance in question represents the taxing rather

than the police power, because the license provided for therein amounts to a *per capita* tax upon dogs, and therefore there is imposed by the ordinance a restriction upon the ownership of those animals. In other words, his contention is that the ordinance authorizes a tax upon the ownership of dogs and not an attempt to regulate their use. We think that perhaps in one part of the main opinion we unhappily used language which might imply that we held that a license for regulatory purposes might be imposed upon the ownership of dogs. What we intended to say then and what we do say now is that a license tax upon dogs may be imposed, as an incident of the regulation of their management or control, or, as counsel prefers to express it, of their *use*. The very terms of the ordinance before us show it to be a regulatory measure. It provides that the owner of the dog, upon the payment of the required license tax, shall attach to a collar to be worn by said dog a seal or device as evidence of the *ownership* of the dog and of the payment of said license tax. It further provides for the enforcement of a penalty for a noncompliance with the law, or "for the doing of some prohibited act." And in that manner the power of police is exercised. (*Merced County* v. *Helm,* 102 Cal. 163, [36 Pac. 399].) The ordinance also provides for the destruction of a dog upon which a license tax has not been paid, and which does not, therefore, bear a collar to which is attached the seal or device referred to. All these provisions, in their very nature, demonstrate that the ordinance is intended as an exercise of the police and not of the taxing power. No American court has ever questioned the right under the police power to regulate the control, management or use of dogs. The dog became a domestic animal originally by virtue of legislative enactments, and but for statutes imparting to him the status of property in all the states and countries where the common law is the foundation of their jurisprudence, the dog would now have no standing before the law, except where, as in the case of other wild animals, he was reduced to possession, and even then, should he depart from his possessor without *animo revertendi,* he thus placed himself again beyond the protection of the law. As illustrative of some of the reasons upon which laws regulating property in dogs are founded we shall here present extracts from some of the many authorities upon the subject. In 67th American State Reports, at page 298, the

editor, in an extended note upon the subject, says: "That property in dogs may be subjected to regulation by the state in the exercise of its police power cannot be questioned. . . . Such regulation usually runs in the direction of imposing license taxes upon the keeping of dogs, and it is well settled that the summary destruction of dogs may be authorized when such regulations are not complied with."

In *Jenkins* v. *Ballantyne,* 8 Utah, 245, [30 Pac. 760], it is said: "The police power of the state has been used to regulate and control property in dogs to a greater extent than property in any other class of domestic animals. It is a peculiar kind of property. Such animals increase rapidly; they are usually of but little expense to their owners when allowed to run at large; and in a domestic state they retain to a considerable degree their wild, mischievous and ferocious natures. Their trespasses and invasions of rights not belonging to their masters are often such as are impossible to prevent, and when the mischief is done sometimes it is impossible to identify the dog or his owner, and when found the latter is sometimes as irresponsible as the former; in fact, judicial process and inquiry is altogether inadequate to redress such wrongs. Hence such laws and ordinances as those in question are adopted, requiring the owner of dogs to register and collar them. By such means the owner is ascertained and made responsible, and all dogs not deemed worth the trouble and expense of registration are outlawed when at large and liable to be killed."

Counsel undertakes to discover a distinction between the law as expounded by the courts in certain other jurisdictions and the law in California because in the former the dog is only qualified or base property, whereas in this state the statute impresses him with the full status of property. So far as the vital question involved in this discussion is concerned, it can make no difference whether the dog is property or not. The power in the state to regulate its control or use is not dependent upon that proposition. The dog is not, because of having been constituted property by legislative enactment, hedged about by a sacredness or surrounded by a halo that will prevent the police power from extending to him if the governing or other duly constituted authorities of an incorporated city or town deem it necessary for the peace and comfort of the

6 Cal. App.—2

community to regulate its use or control within the limits of such city or town. Ordinances prohibiting the running at large within the limits of towns and cities of horses, cows, sheep, hogs and other useful domestic animals, and authorizing their impounding when found so running at large, and even their sale, if not redeemed, might be said with equal reason to restrict in effect the ownership of those animals within the limits of such cities and towns, and such ordinances have been upheld as a wholesome exercise of the police power. Of course, such ordinances are designed only as a regulation of the use and management of those animals, and do not in fact restrict or interfere with ownership. The ordinance here does not, it will be readily noted, either expressly or by implication, attempt to interfere with the ownership of dogs. As stated in the main opinion, the authorities could not by ordinance or otherwise disturb the right of ownership of those animals. Any person ambitious to own a dog of any kind which may best suit his fancy may not only exercise the right of such ownership, but may keep and maintain the animal within the limits of Ukiah city, if he complies with the regulations as to its management, control or use prescribed by the ordinance. The owner of a cow must, in order to maintain and keep that useful animal within the limits of a city or town, obey the regulations of such city or town with reference to such animals, or be subjected to the penalties of the ordinance. And his ownership of the cow is thus in no manner or degree interfered with. In short, the terms of the ordinance only involve the application of the familiar principle that every person shall so use his own property as not to injure the rights of other persons or of the public.

We do not think we misconceived counsel's position as to the effect of section 3366 of the Political Code. His argument upon this point is that that section at the time of its enactment declared the full power of a municipal corporation to license for regulation. What we said in the main opinion was: "Nor is there anything inconsistent between the provisions of the ordinance in question and those of section 3366 of the Political Code," and then declared that incorporated cities and towns derived their power to make all needful police regulations from the constitution itself. Our position in the main opinion was, and we know of no reason for changing it, that section 3366 of the Political Code does not, nor

has the legislature the right to do so at all, limit the power granted by the constitution to counties and to cities and towns to which that section may be applicable to adopt such police regulations as they may decide to be requisite for their welfare, and if a license tax be deemed to be essential to the full accomplishment of the purposes of such regulations, any attempted legislative inhibition against it is absolutely void. The only qualification to be found in this constitutional grant of power to counties and incorporated towns and cities is that such local regulations shall not conflict with general laws. By this is clearly meant that the legislature may itself, by general laws, *exercise the power* thus conferred upon such cities and towns and upon counties, and that local regulations adopted by municipal boards not in harmony with such general laws would, of course, be void and inoperative. In other words, the legislature may itself *exercise* the power granted by the constitution, but cannot *limit* the exercise of such power either by itself or by the local governing bodies. As we understand counsel, his contention is that the section of the code referred to limits the power of licensing for regulation to a "business" of some character, and that a dog is not a "business" in contemplation of that section; hence any attempt to license a dog as an incident of a regulatory measure is contrary to the section named. The statement of the proposition operates as its own refutation. Moreover, when counsel admits, as he appears to do, the right of a municipal corporation to regulate property in a dog or the use thereof, he necessarily admits that such regulation may take the form of a license, for it has never been doubted for a moment, either by the text-writers or the courts, that when a business or other matter which may be the subject of police regulation is so regulated, a license may be required as a condition to carrying on such business or to the maintenance of whatever may be the subject matter of such regulation, and a license fee imposed. The fee exacted for such license is not, as we think we have shown, intended for purposes of revenue, but is designed to cover the expense of supervision or the proper enforcement of the ordinance. In a case like the one at bar, the fee is directed to the accomplishment of a double object: 1. To meet the expense of enforcing the ordinance; 2. The discouragement of the keeping of dogs within the limits of incorporated cities and towns, etc.

Counsel appears to be at a loss to understand what privileges a dog owner receives in return for the license fee. The obvious answer to the suggestion is that a dog upon which the license tax has been paid is, under the special protection of the law, suffered to run at large with impunity. The paramount consideration in the adoption of such a regulation, however, is in the protection it affords the citizens of the city or town against the indiscriminate running at large of dangerous and nuisance-producing dogs without responsible sponsors.

A rehearing is denied.

Burnett, J., and Chipman, P. J., concurred.