[Civ. No. 6853.  Third Dist.  June 15, 1943.]

LUTHER JOHNSON et al., Respondents, v. JOHN S. BAR-
REIRO et al., Defendants; ERNEST INGOLD INCOR-
PORATED (a Corporation), Appellant.

Van Dyke & Harris for Appellant.

F. H. Bowers for Respondents.

ADAMS, P. J.—This is an appeal by defendant Ernest Ingold, Incorporated, a corporation, from a judgment in favor of plaintiffs in an action for damages for personal injuries arising out of an automobile accident. The only question raised upon appeal is the ownership, at the time of the accident, of the automobile which caused the accident, and the ensuing responsibility for injury and damage resulting from its use.

The facts are that John S. Barreiro, who was originally the owner of a Chevrolet coupé, sold same to defendant Ernest Ingold, Incorporated, a Chevrolet dealer, about December 6, 1940, and delivered the certificate of ownership and registration card, duly endorsed, to said defendant. On December 24, 1940, said defendant sold and delivered the said coupé to defendant Wyatt on a conditional sale contract. On December 27, 1940, Wyatt signed a second conditional sale contract which named defendant Ernest Ingold, Incorporated, as seller, and Wyatt as purchaser, and contained the usual clause retaining title in the seller until payment of the full purchase price. No change in possession, and, apparently, no change in the terms of the contract were then made and the seller still retained the certificate of ownership. At some time between December 27 and December 31, 1940, appellant assigned the second contract to defendant Pacific Finance Corporation of California but made no delivery of the car nor certificates of ownership to it. On January 1, 1941, while Wyatt was driving the said coupé near Sacramento, the acci-

dent occurred out of which the damages awarded to plaintiffs arose. His negligence is admitted.

No notice of sale or registration of transfer was filed with or received by the Department of Motor Vehicles prior to the accident. Its records showed, however, its receipt, at its San Francisco branch office, of ''Dealer's Report of Sale and Transfer'' of the said coupé, the registration card and the certificate of ownership, on January 2, 1941. There was no evidence as to how same were delivered to said office. The only witness called by appellant was Ernest Ingold, president of the corporation, who was unable to state how or when they were delivered. Ingold never saw Wyatt and had nothing to do with the transaction which was handled for appellant by other employees, none of whom was called as a witness.

After trial by the court without a jury, findings were made to the effect that appellant Ernest Ingold, Incorporated, was the actual owner of the car at the time of the accident and that Wyatt was driving it with the permission and consent of said owner. Judgment was rendered against Wyatt and said corporation, and the latter only has appealed, contending that appellant made an absolute sale of the automobile to defendant Wyatt, accompanied by delivery of the ownership certificate, and was, therefore, not the owner of the car at the time of the accident; that if, by execution of the conditional sale contracts, appellant became a conditional vendor, nevertheless its status as such ended prior to the accident; that treating appellant as a conditional vendor who was required by law, in order to be absolved of owner liability, immediately to notify the Department of Motor Vehicles of the transfer, the evidence is insufficient to support a finding that the requirements of the law were not complied with by it; and, finally, that the finding of the court that at the time of the accident Wyatt was driving the automobile with the consent of appellant is without support in the evidence.

██ While appellant argues that it made an absolute sale to Wyatt prior to the accident, the trial court found that when the conditional sale contract of December 27th was executed, appellant retained title to the car, and this finding finds full support in the contract itself which provided that title should not pass from seller (Ernest Ingold, Incorporated) to buyer (Charles E. Wyatt) until all payments provided for in the contract were fully paid.

██ As to the second contention, that appellant's status

as conditional vendor ended prior to the accident, the court found that on December 27th the second conditional sale contract was assigned to Pacific Finance Company, and that the latter was the assignee on January 1st when the accident occurred, but that said assignee had not then, nor prior thereto possessed or exercised any dominion over the car, and that the certificates of ownership and the dealer's report of sale were transmitted by appellant to the Motor Vehicle Department and received by its San Francisco branch on January 2nd.

In *Ferroni* v. *Pacific Finance Corporation,* 21 Cal.2d 773 [135 P.2d 569], it was said that sections 402 and 177 of the Vehicle Code have been construed as providing that the conditional vendor of an automobile is liable within the amounts stated in the former section for the operation of such automobile with his consent by his conditional vendee in a negligent manner, where he delivers possession of the car to the vendee and fails to comply with section 177 with reference to giving notice of the transfer prior to the occurrence of the accident (citing *Guillot* v. *Hagman,* 30 Cal.App.2d 582 [86 P.2d 865]; *Bunch* v. *Kin,* 2 Cal.App.2d 81 [37 P.2d 744]; *Helmuth* v. *Frame,* 46 Cal.App.2d 372 [115 P.2d 846]).

Here, as in the Ferroni case, the car was sold on conditional sale contract, and the vendee was in possession of the car and using it with the consent of the owner at the time of the accident; also in this case, as in that one, there was no immediate notification to the Motor Vehicle Department, as the car was delivered to Wyatt on December 24th and notice was not received by that department until January 2nd. The question is who was the *owner* on January 1st when the accident occurred. That appellant was the original conditional vendor is apparent from the contract of sale itself, and it continued to be such unless, by its assignment of the conditional sale contract to Pacific Finance Company, it ceased to be such owner prior to the day of the accident. In the Ferroni case the court said at pages 843-844:

"An assignee of a conditional vendor of a conditional sale contract of a vehicle, is not answerable under section 402 of the Vehicle Code for the negligent operation of the vehicle by the conditional vendee. That follows from the basis of the liability of the conditional vendor under that section. He is liable, and does not fall within the exclusion provision thereof when he fails to comply with section 177 of the Vehicle Code

requiring notice of transfer of the car. That section states that when the owner of a vehicle sells title or interest in the vehicle *and delivers possession thereof,* the department must be notified immediately. Ordinarily the conditional vendor delivers possession of the car to the vendee, but the assignee does not. When the assignment is made, delivery of possession to the conditional vendee has already been completed.'' (Italics by the court.)

Here possession of the car was given to Wyatt by appellant; there was no sale of the car or delivery of possession thereof to the Finance Company, and Wyatt had no dealings with that company, the whole transaction having been handled by appellant's employees; there was no delivery of the certificates of registration and ownership to the Finance Company as far as the evidence shows, and same were apparently retained by appellant and by it delivered to the Motor Vehicle Department when it made its report of sale to that department. Said report of sale recited: ''Complying with the provisions of the Vehicle Code, notification is hereby given to Division of Registration, Department of Motor Vehicles, State of California, that undersigned dealer has transferred vehicle described below'' to Charles E. Wyatt. Appellant's name was appended as dealer. No report of any transfer to Pacific Finance Company was made and it is obvious that no sale or delivery of the automobile itself to Pacific Finance Company was effected. The only report of any sale of the car in question was, then, a report of sale by appellant to Wyatt on December 24th. At that time appellant delivered possession of said car to Wyatt, and never repossessed it.

Assuming, however, that said notice of sale constituted notice of a sale to Pacific Finance, and also assuming that on December 31st appellant made a sale of said car to said company, we are of the opinion that appellant was not relieved of liability at least until notice was received by the Vehicle Department. Appellant argues that it made its report as soon as was reasonably possible, since January 1st was a holiday. But this would not necessarily relieve it of liability in the interim. ■ Recognizing this fact, appellant also argues that the evidence shows that the notice was mailed to the department on December 31st, and that such mailing constituted notice on that date within the provisions of sections 177 and 178 of the Vehicle Code. Our answer to this is that there was

no evidence that the notice was mailed on the 31st, and that the trial court found that the papers were transmitted to the department on January 2nd, the date of their receipt. While Ernest Ingold, president of defendant corporation, testified "I would say that it was mailed by us on the 31st when we received our money," he admitted that he did not know how or when it was delivered; and no other witness was produced in an effort to prove mailing or delivery prior to January 2nd. It was not shown that it was the custom of defendant corporation to mail such reports, and it was admitted that it had "runners" who sometimes performed such services.

Also evidence was produced by plaintiffs showing that appellant was customarily dilatory in the filing of reports of its sales. Other sales made by it on December 31, 1940, were shown not to have been reported until January 4th, 7th and 13th, which perhaps lends significance to the fact that on the morning of January 2nd plaintiff H. A. Crockard, a Chevrolet dealer at Roseville, some of whose equipment was damaged in the automobile accident on January 1st, telephoned to Ernest Ingold, Incorporated, at San Francisco and had a conversation with someone purporting to be the manager, informed him of the accident, asked if he had sold a car to Wyatt, and advised him also that investigation of the records of the Department of Motor Vehicles indicated the car was still registered in the name of Barreiro, and that it would be well for him to investigate as he understood that Ernest Ingold, Incorporated, had some liability; and that said general manager informed him that they had sold the car "about a week ago," and "we are out of it."

Upon the evidence before it we think that the trial court was justified in concluding that the notice was not transmitted until January 2nd, and that its finding to that effect is sufficiently sustained. Even if mailed on the 31st of December, said papers were not received by the department until the 2nd of January; and there is nothing in the applicable statutes to the effect that the deposit of said papers in the mail on the 31st would impute notice to the department as of that date so as to relieve appellant of liability as owner.

Generally speaking, substituted and constructive notices are not favored in law and are countenanced only as a matter of necessity or extreme expediency. (20 Cal.Jur. 243.) And in the absence of a statute authorizing the service of a notice by mail, a notice so served is ineffective unless and until it is

received. (39 Am.Jur. 249; 20 R.C.L. 344.) Also proof of service of notice by mail should show compliance with the conditions of its existence, and show that the notice properly addressed, with postage prepaid, was duly deposited in the mail. (39 Am.Jur. 252.) There was no such proof in this case.

We further note that while in this court appellant urges that the evidence shows that prior to the accident it had relieved itself of liability by transferring ownership to the Finance Company, the record shows that during the trial Mr. Harris, appellant's counsel, stated regarding that company as a defendant in the action: "But, for the life of me, I am at a loss to see how Mr. Chamberlain's client could possibly be held as owner. I will stipulate right now the action, as far as I am concerned, can be dismissed as to Pacific Finance Company. At best, they could have been a security owner for purpose of security. There couldn't be any liability under any set of facts." Also: "What do you want to hold them in for? You have no case against them? It is either me, or nobody."

We conclude that the evidence is sufficient to show that ownership liability at the time of the accident rested with appellant, and that the Finance Company was not the title owner as contemplated by the provisions of the Vehicle Code.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied July 15, 1943, and appellant's petition for a hearing by the Supreme Court was denied August 12, 1943.