[L. A. No. 21945. In Bank. Feb. 20, 1953.]

EVA SIMPSON et al., Appellants, v. THE CITY OF LOS
 ANGELES et al., Defendants and Respondents; MEDI-
 CAL RESEARCH ASSOCIATION (a Corporation)
 et al., Interveners and Respondents.

Brooks Gifford and Morris Lavine for Appellants.

Ray L. Chesebro, City Attorney, William H. Neal and Bourke Jones, Assistant City Attorneys, and Alan G. Campbell, Deputy City Attorney, for Defendants and Respondents.

Musick & Burrell, Howard Burrell, James E. Bednar, Stephens, Jones & La Fever, Raymond W. Stephens, McGinley & Hanson and John P. McGinley for Interveners and Respondents.

GIBSON, C. J.—Plaintiffs seek to restrain defendant city and two officials from carrying into effect subsection (h) of section 53.11 of a Los Angeles city ordinance* which provides,

---

*The ordinance is known as the Los Angeles Municipal Code. Subsection (h) provides: "Whenever any reputable institutions of learning, hospitals, research laboratories or their allied institutes in the City of Los Angeles shall make application to the Health Officer of the City of Los Angeles for permission to use humanely unclaimed impounded animals for the good of mankind and the increase of knowledge relating to the cause, prevention, control and cure of disease, the Health Officer, on being satisfied that the said animals are to be so used, shall, from time to time, certify to the Department of Animal Regulation the names and addresses of said institutions of learning, hospitals, research laboratories and their allied institutes which he is satisfied will use animals humanely for the purposes above specified.

"It shall be the duty of the Department of Animal Regulation to surrender unclaimed impounded animals for such uses only when applied for by the institutions of learning, hospitals, research laboratories and their allied institutes which have been certified by the Health Officer as herein provided. No animal shall be surrendered except as authorized by law.

"In order to give the owners of impounded animals time within which to reclaim the same, no animal shall be surrendered for such uses until it has been impounded for a period of at least five days.

"No animal shall be surrendered for medical research, the owner of which has turned over such animal to the Department of Animal Regulation for destruction. Any such request for destruction of an animal by the owner thereof shall be complied with by the Department.

"The Department of Animal Regulation shall adopt and enforce rules and regulations providing for the care of animals so surrendered comparable to Supplement 211 Public Health Reports, 1949, Federal Security Agency, entitled, 'Care of the Dog Used in Medical Research.'"

in part, that the Department of Animal Regulation shall surrender unclaimed animals which have been impounded for five days to reputable institutions of learning, hospitals and laboratories that have been certified by the city health officer as organizations which will use animals humanely for the good of mankind in medical research. General demurrers were sustained with leave to amend. Plaintiffs failed to amend, and judgment was thereafter entered in favor of defendants.

The complaint alleges that three of the plaintiffs are resident taxpayers who own dogs licensed by the city, that the fourth plaintiff resides in adjacent unincorporated territory and owns a dog licensed by the county, that these dogs have recently become estrays without fault on the part of their respective owners and that plaintiffs have made due and diligent inquiry but have been unable to locate their pets. There is no allegation as to what happened to the dogs, but it is alleged that they are subject to seizure and impounding by the Department of Animal Regulation and that defendants threaten to enforce subsection (h) of section 53.11 and to surrender unclaimed impounded dogs for medical research. It is contended that this portion of the ordinance is invalid because of asserted irregularities in connection with the election at which it was adopted, that it conflicts with state law, that its enforcement will deprive plaintiffs of their dogs without due process of law and constitute an unlawful taking of private property, and that it provides for a gift of public property. It is also asserted that the ordinance improperly vests uncontrolled discretion in the health officer and permits him to discriminate arbitrarily between research institutions and that it is invalid as special legislation because it grants privileges to a limited class of institutions.

██ A preliminary question has been raised as to plaintiffs' right to bring the action, but it is sufficient to note that the complaint alleges that three of the plaintiffs are resident citizens and taxpayers of the city and that enforcement of the ordinance will result in unlawful expenditures of municipal funds. As such taxpayers, they are entitled to sue to prevent the alleged illegal expenditures. (Code Civ. Proc., § 526a; *Clouse* v. *City of San Diego*, 159 Cal. 434, 438 [114 P. 573]; *Wirin* v. *Horrall*, 85 Cal.App.2d 497, 504-505 [193 P.2d 470]; see *Crowe* v. *Boyle*, 184 Cal. 117, 152 [193 P. 111]; *Yarnell* v. *City of Los Angeles*, 87 Cal. 603, 610 [25 P. 767].)

In support of their claim that subsection (h) was not legally adopted, plaintiffs allege that the opponents of the measure followed instructions from an assistant city attorney that any printed arguments which the opponents desired to have mailed to the voters with the sample ballots must be on newsprint of a specified size and that no rotogravure would be allowed. Plaintiffs complain that the city clerk permitted proponents of the measure to use leaflets of a larger size which were processed by rotogravure on slick paper, and that as a result a substantial number of voters cast their votes in favor of the measure because of the more attractive appearance of proponents' arguments. ■ Courts are reluctant to defeat the fair expression of popular will in elections and will not do so unless required by the plain mandate of the law. (See *Davis* v. *County of Los Angeles*, 12 Cal.2d 412, 426-427 [84 P.2d 1934]; *In re East Bay etc. Water Bonds of 1925*, 196 Cal. 725, 744 [239 P. 38]; *Rideout* v. *City of Los Angeles*, 185 Cal. 426, 430 [197 P. 74].)

■ It is asserted by defendants, and not disputed by plaintiffs, that the arguments were prepared pursuant to sections 275 and 289 of the Los Angeles City Charter, which provide that the clerk shall prescribe the form of printing and the character of paper to be used. There is no allegation in the complaint that the city clerk acted improperly or that he was aware of the instructions assertedly given to the opponents of the measure by the assistant city attorney. Moreover, it does not appear that the assistant city attorney had any authority to bind the city by giving such instructions. It follows that the matters complained of do not constitute grounds for invalidating the adoption of the measure.

Plaintiffs also allege that the argument of the proponents which was mailed to the voters failed to conform with the provisions of section 343 of the Election Code of the City of Los Angeles. The complaint, however, does not quote the language of the section or state its effect, nor does it give the title or date of passage. (See Code Civ. Proc., § 459.) ■ We cannot take judicial notice of city ordinances. (See *City of Oakland* v. *Brock*, 8 Cal.2d 639, 641 [67 P.2d 344].) ■ Under the circumstances the pleading is insufficient. (*City of Tulare* v. *Hevren*, 126 Cal. 226, 229-231 [58 P. 530].)

The next question is whether the portion of the ordinance under attack is invalid because of asserted conflicts with state laws. ■ In our opinion, the licensing, impounding

and disposition of dogs is not exclusively a municipal affair, and, therefore, if there is any conflict between the ordinance and the state law, the latter will prevail. (Const., art. XI, § 11; see *Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 666 [177 P.2d 558, 170 A.L.R. 225]; *In re Portnoy,* 21 Cal.2d 237, 239-240 [131 P.2d 1]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 370-371 [125 P.2d 482, 147 A.L.R. 515].) ■ The city, however, under its police power, may enact local measures which do not conflict with general statutes. (Const., art. XI, § 11.)

■ Sections 391 to 403 of the Agricultural Code do not operate to invalidate the ordinance. The code sections regulate the seizure and disposition of estrayed stock and domestic animals generally, and it is expressly provided that nothing therein shall affect municipal regulations regarding estrays. (Agr. Code, § 400.) ■ Similarly there is no inconsistency between subsection (h) and another general law which relates to the running at large of dogs and the protection of livestock and provides for the licensing, impounding and disposition of dogs. (1 Deering's Gen. Laws, Act 384; Stats. 1921, p. 1306, as amended.) Subsection (h) will, of course, be read as applying only to dogs which have been lawfully impounded, and the statute expressly recognizes the power of local bodies to provide for "the killing in some humane manner or other disposition of" lawfully impounded dogs. (1 Deering's Gen. Laws, Act 384, §§ 6, 7.5.)

■ Sections 597, 599b and 599c of the Penal Code which define and prohibit cruelty to animals are applicable generally throughout the state, but they do not occupy the field in which the ordinance operates, and there is nothing therein which conflicts with their provisions. ■ Section 599c of the Penal Code provides that nothing in the sections relating to cruelty to animals shall be construed as "interfering . . . with properly conducted scientific experiments or investigations performed under the authority of the faculty of a regularly incorporated medical college or university of this state." It thus appears that the basic purpose of section 599c is to limit the effect of the provisions prohibiting cruelty to animals rather than to regulate the disposition of impounded animals. The section does not purport to designate all the institutions which may receive such animals for experimental purposes or to forbid experimentation by other than those it names, and it cannot reasonably be said that the Legislature intended to indicate that proper and humane

experiments can be conducted only under the authority of the faculty of a regularly incorporated medical college or university. ▉ While it is true that, under the ordinance, research institutions other than medical colleges or universities may receive animals for experimental purposes, this obviously does not conflict with the Penal Code prohibition of cruel or improper experiments. Instead, as we have seen, it is specifically provided that the hospitals or research institutions which receive dogs must have been certified as organizations which will use them "humanely . . . for the good of mankind and the increase of knowledge relating to the cause, prevention, control and cure of disease." Our conclusion in this connection is strengthened by sections 1650 to 1677 of the Health and Safety Code, enacted in 1951, which provide for state regulation of the use of animals for medical research. Sections 1651 and 1667 permit such use by any "person . . . laboratory, firm, association, corporation, copartnership, and educational institution," upon compliance with certain rules, and section 1670 expressly provides that nothing in this chapter shall be construed to limit or restrict the right of cities to adopt or enforce ordinances regulating the use or procurement of animals for medical research.

We come next to plaintiffs' contention that enforcement of the ordinance will deprive them of their property without due process of law. ▉ It is well settled that the licensing of dogs and the regulation of the manner in which they shall be kept and controlled are within the legitimate sphere of the police power, and that statutes and ordinances may provide for impounding dogs and for their destruction or other disposition. (*Hofer* v. *Carson*, 102 Ore. 545 [203 P. 323, 326] ; see *In re Ackerman*, 6 Cal.App. 5, 13-14, 16-17 [91 P. 429] ; *Sentell* v. *New Orleans & C. Railroad Co.* [1897], 166 U.S. 698 [17 S.Ct. 693, 695-696, 41 L.Ed. 1169] ; 8 A.L.R. 67, 74-76; 2 Am.Jur. 719, 721, 799.) The complaint does not attack the right of the city to provide for the impounding of stray dogs or for the disposition of impounded dogs by such methods as are covered by other portions of section 53.11 of the ordinance, namely sale, destruction, or gift to the armed forces, but plaintiffs assert that the surrender of animals for medical research pursuant to the ordinance amounts to an unlawful taking of private property. ▉ It is clear, however, that when dogs have been lawfully impounded under the police power and

have become subject to disposition under the terms of the ordinance by any of the means noted above, private property rights in such dogs must, in the interest of public welfare, be treated as having been terminated.

 Plaintiffs also contend that subsection (h) is invalid because it does not contain any provision for notice to the owner of an impounded dog. This subsection provides that "no animal shall be surrendered [for medical research] except as authorized by law" and that "in order to give the owners of impounded animals time within which to reclaim the same, no animal shall be surrendered for such uses until it has been impounded for a period of at least five days." Under subsection (b)* the owner, if known, must be notified in every case where a dog is impounded, regardless of the proposed method of disposing of the animal, and the city must act to give such notice within one day after the dog is impounded. The provision of subsection (h) that no animal shall be surrendered except as authorized by law clearly contemplates and requires compliance with all other applicable subdivisions, including the notice provisions of subsection (b). The courts, whenever possible, adopt that interpretation of a statute which will render it constitutional, and, therefore, the subsections should be read together for the purpose of avoiding any question of invalidity arising from the lack of a specific notice requirement in subsection (h).

When considered together the subsections require that the city must act to give notice to the owner, if known, within one day after a dog is impounded and that the owner must have at least five days after receipt of such notice in which to reclaim the animal. Subsection (b) does not specify the method by which the owner shall be notified of the impounding, and since there is nothing elsewhere in the ordinance to indicate that any particular form of notice is contemplated, the owner, under the authorities, is entitled to actual notice. (See *Colyear* v. *Tobriner*, 7 Cal.2d 735, 743 [62 P.2d 741, 109 A.L.R. 191]; *Johnson* v. *Barreiro*, 59 Cal. App.2d 213, 218 [138 P.2d 746]; *cf. Stockton Automobile Co.*

---

*Subsection (b) provides: "In the case of dogs, the Department of Animal Regulation shall hold such animal for a period of one (1) day after the impounding of such animal, during which time the owner of said animal, if known, shall be notified, after which time said animal may be sold by an officer of the Department in the same manner as provided in this Section for the sale of other animals except that notice of sale need be posted for only two (2) days in the places named in this section."

v. *Confer*, 154 Cal. 402, 408 [97 P. 881] ; *Long* v. *Chronicle Pub. Co.*, 68 Cal.App. 171, 179 [228 P. 873] ; *Alphonzo E. Bell Corp.* v. *Listle*, 55 Cal.App.2d 300, 306 [130 P.2d 251].) We need not speculate as to the possible methods by which actual notice may be given to a known owner, since we may assume that the city will proceed in a manner sufficient to meet all requirements of law. The provision of subsection (h) that, "in order to give the owners . . . time within which to reclaim the same," no animal shall be surrendered for medical research until it has been impounded for "at least five days" was obviously intended to afford an owner ample opportunity to reclaim his animal, and in our opinion the subsections should be construed as providing that the five day period does not begin to run against a known owner until he has received actual notice of the impounding. So construed, the ordinance affords adequate notice to an owner whose identity is known.

 If a dog is wearing a license tag as required by section 53.15 et seq. of the ordinance, the name and address of its owner will be available to the Department of Animal Regulation so that notice may be given. By prescribing a system of licenses and requiring dogs to wear a numbered tag at all times when at large on the streets, the city has done all it can to make sure that it will know the owner's identity. The tag requirement is reasonable, and an owner can insure his getting notice in all but exceptional cases by complying with the ordinance. If a dog is not wearing a license tag when impounded, its owner will not have any ground to complain of a failure to receive notice, because the ordinance places upon him the duty to make sure that the dog wears its license tag at all times except when it is indoors or in an enclosed yard or pen. (Ordinance, § 53.21.) In view of the foregoing it is unnecessary for us to consider whether an ordinance of this type would be invalid if it did not contain a provision for notice. (See *Sentell* v. *New Orleans & C. Railroad Co.* [1897], 166 U.S. 698, 704-706 [17 S.Ct. 693, 695-696, 41 L.Ed. 1169] ; and cases cited in 8 A.L.R. 67, 74-76.)

 There is no merit to plaintiffs' contention that the ordinance deprives them of their property without a hearing. Section 53.13 provides that an owner may redeem an impounded animal upon payment of certain fees and charges, and section 53.12, which sets forth the charges to be collected by the Department of Animal Regulation, states that "No fees whatsoever shall be charged or collected for or on account

of any animal which has been unlawfully taken up or impounded, and any such animal shall be immediately delivered upon demand therefor to the owner or person entitled to the custody thereof.'' The ordinance thus contemplates that a factual or mixed factual and legal determination shall be made by the department, and under these circumstances it must be interpreted to provide for a hearing, when requested by the owner, upon the question of whether a dog has been legally seized. (*Cf. Fascination, Inc.* v. *Hoover*, 39 Cal.2d 260, 268-271 [246 P.2d 656].) If, on the other hand, the owner of a dog concedes the legality of the impounding and fails to redeem the dog or to exercise his right under the subsection to demand that the dog be destroyed rather than turned over for medical research, there is no further need for a hearing.

 The surrender of impounded, unclaimed animals to private research laboratories and institutions is not a gift of public property within the meaning of sections 22 and 31 of article IV of the California Constitution, since the animals are to be used for a public purpose. (*Cf. California Emp. Stab. Com.* v. *Payne,* 31 Cal.2d 210, 216 [187 P.2d 702] ; *County of Los Angeles* v. *La Fuente,* 20 Cal.2d 870, 877 [129 P.2d 378] ; *County of Alameda* v. *Janssen,* 16 Cal.2d 276, 281-282 [106 P.2d 11, 130 A.L.R. 1141].) Under the terms of the ordinance animals may be turned over only to such institutions as will use them ''for the good of mankind and the increase of knowledge relating to the cause, prevention, control and cure of disease,'' and the Health and Safety Code expressly recognizes that ''public health and welfare depend on the humane use of animals'' for medical research. (Health & Saf. Code, § 1650.) Under these circumstances the fact that private laboratories may derive some incidental benefit from the use of the animals is immaterial. (*California Emp. Stab. Com.* v. *Payne, supra,* 31 Cal.2d 210, 216 ; *County of Alameda* v. *Janssen, supra,* 16 Cal. 276, 281.)

 Another ground of asserted unconstitutionality is that the city health officer is invested with uncontrolled arbitrary discretion to determine which institutions are qualified to receive impounded animals for purposes of medical research. As we have seen, however, the ordinance describes the kinds of institutions which may apply for unclaimed animals and provides that the health officer is to certify any reputable organization on being satisfied that the animals will be used humanely for the specified purposes. In our opinion this constitutes a sufficient standard for the guidance of the city health

officer. It is obviously unnecessary for the ordinance to define what constitutes a reputable institution or a humane use of animals, and in view of the number and variety of medical experiments involving the use of animals and the rapid changes in medical science this appears to be a situation in which the broad type of standard set forth in the ordinance is appropriate. (*Cf. Caminetti* v. *Pacific Mut. L. Ins. Co.*, 22 Cal. 2d 344, 364 [139 P.2d 908]; *Butterworth* v. *Boyd*, 12 Cal.2d 140, 148-149 [82 P.2d 434, 126 A.L.R. 838]; *Gaylord* v. *City of Pasadena*, 175 Cal. 433, 439-440 [166 P. 348].)

 The final objection is that subsection (h) is special legislation which discriminates in favor of some institutions and denies equal protection to others because the city health officer is empowered to certify only certain types of institutions and only those located within the city of Los Angeles. However, the organizations which the health officer is authorized to certify are reputable institutions of learning, hospitals and laboratories which will use animals humanely in medical research for the good of mankind. This classification is designed properly for the promotion of the general health and welfare of the public. Nor is there anything improper in restricting the institutions which may receive animals to those which are located within the city of Los Angeles. Since the city health officer may certify only those institutions which he is satisfied will use animals for the designated purpose, it is not unreasonable to confine his investigations to organizations which are within the city limits.

The judgment is affirmed.

Shenk, J., Traynor, J., Spence, J., and Van Dyke, J. pro tem., concurred.

CARTER, J.—I dissent.

I cannot agree with the construction placed by the majority on the sections of the ordinance in question or that the notice provisions contained in those sections are sufficient to afford due process of law. Subsection (b) of section 53.11 provides that an owner must be notified within one day after a dog is impounded and that the animal may be *sold* thereafter if notice of sale is posted for two days; under subsection (h) it is provided that no dog may be *surrendered to a certified institution for experimental purposes* unless it has been impounded for at least five days. The majority of this court indulges in some legerdemain in the field of judicial legisla-

tion and comes up with the startling result that these two sections must be read together: that the one day notice provision in subsection (b) applies to subsection (h). By reading them together, the majority rewrites the ordinance so that it provides that an owner has five days after *receipt* of *actual notice* in which to reclaim his dog before it is surrendered for experimental purposes. This is done, we are informed, "for the purpose of avoiding any question of invalidity *arising from the lack of a specific notice requirement in subsection (h)*." Using reasoning such as this, *any* statute could be "interpreted" in such a way as to render it constitutional.

The *only* notice provision applies to dogs about to be *sold*. There is no notice provision in the subsection providing for surrender of such dogs for experimental purposes. The sale of a dog and its surrender for experimental purposes are two entirely different things and there is no basis in logic for the statement of the majority that these two subsections must be read together and that the notice provision of the sale subsection applies to the surrender subsection. Subsection (b) deals specifically and exclusively with the sale of impounded dogs; subsection (h) deals only with the surrender of unclaimed, impounded animals for experimental purposes. The only provision of subsection (h) of section 53.11 which could possibly be construed as providing for any notice is that which reads: "In order to give the owners of impounded animals time within which to reclaim the same, no animal shall be surrendered for such uses until it has been impounded for a period of at least five days." But we are informed by the majority that subsection (b) which provides that the owner of the animal, if known, shall be notified within a period of one day, applies "regardless of the proposed method of disposing of the animal." We are told that this means "actual notice" but that "We need not speculate as to the possible methods by which actual notice may be given to a known owner, since we may assume that the city will proceed in a manner sufficient to meet all requirements of law." The subsection provides that the Department of Animal Regulation "shall *hold* such animal *for a period of one (1) day after the impounding of such animal, during which time* the owner of said animal, if known, shall be notified, *after which time said animal may be sold.* . . ." (Emphasis added.)

The notice provision in subsection (b) which is to be read into subsection (h) does not take into consideration the fact that even if the name of the registered owner appears on the license tag, that one day's mailed notice in the city of Los Angeles is unreasonable and insufficient. It is pointed out in the briefs, that due to the present condition of the mail delivery service, it usually takes two days for ordinary mail to reach its addressee who resides within the city limits. It does not take into consideration the fact that the owner of the dog may not have a telephone; that the owner of the dog might be out of town. It does not take into consideration the length of time it might take an employee of the particular pound in question to ascertain, from the Department of Animal Regulation, the full name, address, telephone number, etc. of the owner of the dog. And, it should not be overlooked that the majority, in construing the notice required to be actual notice received by the owner, *has* overlooked the provision of the subsection which provides, by the use of mandatory language, that the animal shall be held for one day, during which time the owner shall be notified, and that *after* that time, the animal may be sold after posting notice of sale for two days. *This section provides for a three day period at the most before an impounded animal may be sold.* It should be noted, in this respect, that the posted notices are to be placed at (1) the public pound; (2) the city hall; (3) the central police station. There are five public pounds in Los Angeles. At which one is the notice to be posted?

I cannot understand how the one day provision in subsection (b) can possibly be construed to mean that the owner of the dog must be given actual notice which must be received and that he thereafter (subsection (h)) has five days within which to reclaim his dog. However, by such reasoning, a majority of this court, has now placed the constitutional stamp of approval upon the ordinance. In my opinion the notice provisions are insufficient to afford due process of law.

In judging what is due process of law, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in hand, respect being had to the cause and object of the taking (*Wulzen* v. *Board of Supervisors,* 101 Cal. 15 [35 P. 353, 40 Am.St.Rep. 17]; *Imperial Water Co.* v. *Board of Supervisors,* 162 Cal. 14 [120 P. 780]). While it is impossible to define with precision "due process of law" it means, broadly speaking, that before a man's

property may be taken by the state, he must be given notice of the proceedings which may terminate in the taking, and be given an opportunity to be heard. It means further that the notice shall be a real and reasonable one, and the hearing, such as is ordinarily, or at least reasonably, given in similar cases (*Beck* v. *Ransome-Crummey Co.*, 42 Cal.App. 74 [184 P. 431]). Particularly applicable here is the statement found in *People* v. *Broad,* 216 Cal. 1 [12 P.2d 941], where this court said ". . . the essential validity of the law was to be tested not by what has been done under it, but what may by its authority be done; and where a statute makes no provision for hearing or notice, either actual or constructive, *such defect is not supplied by the voluntary adoption by public officers of rules covering the situation.*" In *Roller* v. *Holly,* 176 U.S. 398, 409 [20 S.Ct. 410, 44 L.Ed. 520], it· was said "That a man is entitled to some notice before he can be deprived of his liberty or property, is an axiom of the law to which no citation of authority would give additional weight; but upon the question of the length of such notice there is a singular dearth of judicial decision. It is manifest that the requirement of notice would be of no value whatever, unless such notice were reasonable and adequate for the purpose (*Davidson* v. *New Orleans*, 96 U.S. 97 [24 L.Ed. 616]; *Hagar* v. *Reclamation District*, 111 U.S. 701-712 [4 S.Ct. 663, 28 L.Ed. 569])." In that case, it was held (413) that "Without undertaking ·to determine what is a reasonable notice to nonresidents, we are of opinion, under the circumstances of this case, and considering the distance between the place of service and the place of return, that five days was not ·a reasonable notice, or due process of law. . . ." The Roller case was followed in *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 [70 S.Ct. 652, 94 L.Ed. 865], where it was said "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality *is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, Milliken* ·v. *Meyer,* 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]; *Grannis* v. *Ordean,* 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; *Priest* v. *Las Vegas,* 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; *Roller* v. *Holly,* 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]. The notice must be of such nature as reasonably to convey the required information, *Grannis* v. *Ordean, supra,* and it must afford a

reasonable time for those interested to make their appearance. . . . But when notice is a person's due, process which is a mere gesture is not due process." And in *Griffin* v. *Griffin*, 327 U.S. 220, 228 [66 S.Ct. 556, 90 L.Ed. 635], it was said "It is plain in any case that a judgment *in personam* directing execution to issue against petitioner, and thus purporting to cut off all available defenses, could not be rendered on any theory of the State's power over him, without some form of notice by personal or substituted service. *Wuchter* v. *Pizzutti*, 276 U.S. 13, 18-20 [48 S.Ct. 259, 72 L.Ed. 446]; Restatement of Conflict of Law, § 75; and compare *Milliken* v. *Meyer*, 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357]. *Such notice cannot be dispensed with even in the case of judgments in rem with respect to property within the jurisdiction of the court rendering the judgment. Roller* v. *Holly*, 176 U.S. 398, 409 [20 S.Ct. 410, 44 L.Ed. 520]." (Emphasis added.)

If the dog is not wearing a license tag, the majority says that "its owner will not have any ground to complain of a failure to receive notice, because the ordinance places upon him the duty to make sure that the dog wears its license tag at all times except when it is indoors or in an enclosed yard or pen." Apparently we now forget about the one day notice, actual and received, and the dog is held for the prescribed (subsection (h)) period of five days before being surrendered to a hospital or institution for experimental purposes. Under reasoning of the type indulged in by the majority, we can read the ordinance as circumstances warrant. So now, no notice being practicable, we just look to the five day provision. This period of time is unreasonable. It does not take into consideration the fact that duly licensed dogs may lose their tags after straying; that they may, and do, break their collars thereby losing their tags; that strangers may remove either collar or tag; that dogs may escape from enclosed pens, or get out of the houses of their owners (where they are not required to wear tags) and wander far afield. It does not take into consideration the not-unusual cases of theft of valuable, registered dogs. It does not take into consideration the size of the city of Los Angeles with its five pounds, and four private shelters, and 19 pounds and animal shelters in Los Angeles County, or the fact that the owner of the dog might be out of the city when his dog escapes from his home and the person caring for it, or from a kennel where he has left it to be cared for.

The majority, in placing its approval upon this five day period, has failed to consider that when a dog is missing, the owner assumes, often correctly, that the dog will come home the next day and therefore does nothing for a one day period; that the dog may be a ''wanderer'' who has always returned from his prior wanderings; and that dogs do not seek the nearest pound, or shelter, upon running away. No consideration is given to the obvious fact that the owner of the dog may advertise for his lost pet, that he may for the first few days of the dog's absence call at the pounds and shelters with no success, only to have the dog picked up later when he has started to advertise for its return. In my opinion, due process of law requires that the ordinance provide for some type of notice in cases where the dog is not wearing a license tag. That notice could be by newspaper advertisement, giving the description of the dogs impounded, or by radio announcement, or by posting descriptions in various places throughout the city.

The ordinance here involved is, in my opinion, unconstitutional in that it constitutes a taking of property without due process of law as the courts have defined that guarantee in both the Constitution of the United States and of California.

I would therefore reverse the judgment.

Appellants' petition for a rehearing was denied March 19, 1953. Carter, J., was of the opinion that the petition should be granted.